TREK LEASING, INC., a Navajo Nation Corporation, Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 02–1345 C.

United States Court of Federal Claims.

Filed: June 30, 2005.

Reissued for Publication: July 7, 2005.

Rod D. Baker, Albuquerque, NM, for plaintiff.

Jon Tornquist, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Peter D. Keisler, Assistant Attorney General, and John Fargo, Director; of counsel were Gary Hausken, Assistant Director, United States Department of Justice, and Michael F. Kiely, United States Postal Service.

## OPINION

DAMICH, Chief Judge.

On April 6, 2004, Trek Leasing, Inc. (hereinafter "Plaintiff" or "Trek") filed its Motion for Partial Summary Judgment of Liability for Copyright Infringement (hereinafter "Pl.'s Mot.") under Rule 56(b) of the Rules of the United States Court of Federal Claims (hereinafter "RCFC"). Defendant responded by filing a cross-motion for summary judgment of non-infringement (hereinafter "Def.'s X–Mot.") on April 30, 2004. For the following reasons, Plaintiff's motion is hereby

DENIED, and Defendant's cross-motion is GRANTED.

## I. Background [1]

Plaintiff brought this suit under 28 U.S.C. §§ 1491, 1498(b), seeking damages for actions of the United States government (hereinafter "Defendant"), through its agency the United States Postal Service (hereinafter "USPS") and the USPS's contractor APMI, Inc. (hereinafter "APMI"). Plaintiff claims that these actions constitute infringement of its architectural plans and its architectural work, embodied in a post office building in Arizona. Compl. ¶¶ 9, 12.

In 1998, Trek constructed a building in Fort Defiance, Arizona, for lease by the USPS as a post office facility. The allegedly infringing building is another post office, built by APMI in Kayenta, Arizona, for the USPS, of which the USPS took possession on June 5, 2000. On October 7, 2002, Plaintiff filed this action, claiming that Defendant infringed Plaintiff's copyright by "affirmatively directing, authorizing, and paying for the erection of the Kayenta Post Office facility." [2] Compl. ¶¶ 9, 20–21. Initially, Plaintiff claimed infringement of its architectural drawings and its architectural work, but only the architectural work claim remains, as Plaintiff has withdrawn its claim for infringement of its copyrighted drawings. Plaintiff's Response to Defendant's Cross–Motion for Summary Judgment of Non–Infringement, and Reply in Support of Plaintiff's Motion for Partial Summary Judgment of Infringement (hereinafter "Pl.'s Reply") at 8–9.

In February 2004, Defendant filed a motion to dismiss for lack of jurisdiction, alleging that Plaintiff is not the owner of the Fort Defiance copyrights. The Court denied this motion in October 2004. Currently, the Court reviews the above-mentioned cross-motions for summary judgment.

## II. Standard of Review

Pursuant to § 1498(b), the owner of a valid copyright may bring an action against the United States when a copyright is infringed "by a contractor ... acting for the Government and with the authorization or consent of the Government." Since APMI was acting as a contractor for the USPS when it built the Kayenta Post Office, Plaintiff has properly filed suit under 28 U.S.C. § 1498(b).

For either party's motion for summary judgment to succeed, that party must demonstrate both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is considered material if it might affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. An issue of material fact is deemed genuine if the evidence is such that a reasonable jury or trier of fact could return a verdict in favor of the non-moving party. *Id.* When examining the evidence, the trial court must resolve significant doubts about factual issues in favor of the non-movant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). For cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987).

The comparison of two works is an issue for the fact finder and often is not appropriate for summary judgment. *See, e.g., Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990) (reversing lower court's grant of sum-

---

1. The facts in this section are undisputed and originate from the following two documents, unless otherwise stated: Defendant's Response to Plaintiff's Second Set of Proposed Findings of Uncontroverted Fact, filed August 23, 2004 (hereinafter "Def.'s Resp. to PPFUF"), and Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact, filed August 12, 2004 (hereinafter "Pl.'s Resp. to DPFUF").

2. Plaintiff admits that these copyrights related to the "exterior facade and shell" of the building, as the "layout and footprint of the facility are standard USPS design." Compl. ¶ 18. The architectural work was registered with the United States Copyright Office as Registration No. VA 1–116–566, while the architectural drawings were registered as Registration No. VA 1–116–567. Compl. ¶¶ 20–21, Exs. 2A, 2B.

mary judgment for the defendant where reasonable minds could differ). However, it can be appropriate in certain circumstances. *See, e.g., Rice v. Fox*, 330 F.3d 1170 (9th Cir.2003) (affirming the portion of district court's decision that granted summary judgment to defendant on the issue of copyright infringement); *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir.2000) (affirming district court's grant of summary judgment to defendant); *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir.1983) (holding that summary judgment for a plaintiff in a copyright infringement suit is appropriate only when the two works are overwhelmingly identical); *Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.*, 295 F.Supp. 1366 (S.D.N.Y.1969) (granting summary judgment for a plaintiff where the defendant infringed the plaintiff's fabric design), *aff'd*, 415 F.2d 1007 (2d Cir.1969).

## III. Discussion

■ To succeed in its motion, Plaintiff must prove that it owns a valid copyright in the work, that Defendant copied the work, and that Defendant misappropriated protectable elements of the work. *Feist Publ'ns., Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C.Cir.2002). In the usual case, a plaintiff must prove that the defendant's work is "substantially similar" to the protectable portions of its work. *See Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir.1982), *superceded by statute on other grounds as stated in Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1429 (7th Cir.1985); Nimmer on Copyright § 13.01(B) (Plaintiff

must prove actionable copying; "copying as a legal proposition—whether the defendant's work is substantially similar to plaintiff's work such that liability may attach.").

Although Defendant disputes the copyrightability of some features of Plaintiff's work, insofar as the work is copyrightable, Defendant does not dispute that the Plaintiff is the copyright owner. *See* Def.'s X–Mot. at 13. Defendant has also admitted that the government had access to, and factually copied, Plaintiff's work. *See* Oral Arg. Tr. at 7:1–3, 41:22–25 (Feb. 11, 2005) (Defense counsel admitted that it would "concede that there was a general intent to make [the structures] similar with access.").[3] In addition, according to Nimmer on Copyright § 13.01(B), such use of a copyrighted work "as a model, template, or even inspiration" can be cause for inferring factual copying. But Plaintiff has failed to prove that Defendant's work is substantially similar enough to Plaintiff's work for the Court to hold Defendant liable for copyright infringement.[4] As set forth below, there are no genuine issues of material fact, and the Court finds that Defendant is entitled to judgment as a matter of law.

### A. Copyrightability of Plaintiff's Work

Defendant has called into question the copyrightability of Plaintiff's work, based primarily on the fact that Plaintiff's work was designed to reflect the BIA Pueblo Revival style of architecture and on the fact that Plaintiff's work was constrained by external factors, such as cost restrictions, and dimensions, placement of windows and doors, etc., that were specified by the USPS standard drawings ("SSBD").[5] These constraints, De-

---

3. The Court recognizes that the oral argument transcript, at 7:3–5 states that Defendant also "would to [sic] concede that there is substantial similarity of protectable expression." However, based on the context, the Court's remembrance of the event, and the oral argument transcript at 41:22–25 ("[W]e would not concede that there was an intent to copy protectable expression."), the Court reads the word "to" in the quotation at 7:3–5 to actually mean "not."

4. Although the usual test for misappropriation is substantial similarity, for the reasons stated below, the Court finds that a thin copyright exists

in this case, and therefore applies a supersubstantial similarity test. *See* Part III.B.2., *infra*.

5. Plaintiff based Fort Defiance partially on the USPS 65A drawings. Pl.'s Resp. to DPFUF ¶ 6. That designation refers to the standard set of drawings used by the USPS to construct a post office that has an area of approximately 6,500 square feet. *See* Def.'s X–Mot at 6 n. 1. The post office at Kayenta uses as similar set of drawings, but those drawings are referred to collectively as USPS 80A drawings, Pl.'s Resp. to DPFUF ¶ 26, as they represent a post office of 8,000 square feet. *See* Def.'s X–Mot. at 6 n. 1.

fendant argues, have resulted in a lessening of originality in Plaintiff's structure.

According to 17 U.S.C. § 101, an architectural work "includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." As the Supreme Court has articulated, "the mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Publ'ns,* 499 U.S. at 348, 111 S.Ct. 1282. Copyright protection will only extend to those elements of a work that are original to the creator of the work. *Id.* Original elements of a work are those elements that have "some minimal degree of creativity." *Id.* Because a copyrighted work may consist of both protected and unprotected elements, a finding of infringement is not appropriate where the similarities arise only with respect to unprotected elements of the creator's work. *See Data East USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 208 (9th Cir.1988).

Since Defendant has questioned the copyrightability of the Plaintiff's work, the Court must first decide whether Plaintiff's work is original. As the Plaintiff has worked in the Pueblo Revival style, the Court cannot look for originality in the mere presence of the elements of the style, but must determine whether the use of the elements of the style was original. In addition, the Court must determine what is the effect on the originality inquiry of the external factors previously mentioned. Once the protectable aspects of the plaintiff's work are identified, they may be compared with the allegedly infringing work to determine copyright liability. *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284–85 (10th Cir.1996); *see also Feist,* 499 U.S. at 361, 111 S.Ct. 1282 (For infringement to be found, the alleged infringer must have copied "constituent elements of the work that are original."). This approach

is very much like the abstraction-filtration-comparison test applied with regard to computer programs. *See, e.g., Gates Rubber Co. v. Bando Chem. Indus.,* 9 F.3d 823, 834–39 (10th Cir.1993); *Autoskill, Inc. v. Nat'l Educ. Support Systems,* 994 F.2d 1476, 1491–97 (10th Cir.1993); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 707 (2d Cir.1992). The Tenth and Sixth Circuits have expanded the concept of abstraction-filtration analysis to other cases. *See Kohus v. Mariol,* 328 F.3d 848, 855 (6th Cir.2003); *Country Kids,* 77 F.3d at 1285 n. 5 ("The 'abstraction-filtration-comparison' test, or the 'successive filtration' test, was developed for use in the context of alleged infringement of computer software .... However, we see no reason to limit the abstraction-filtration-comparison approach to cases involving computer programs.") (citations omitted). In addition, the District of Columbia Circuit has applied a similar analysis to an architectural work case in *Sturdza v. United Arab Emirates,* 281 F.3d at 1295.[6]

### 1. Separation of the Unprotectable Aspects of Plaintiff's Work

Plaintiff admits that it "created *a Territorial or Pueblo Revival style 'shell' placed over a standard USPS 65A template.*" Pl.'s Resp. to DPFUF ¶ 14 (emphasis added) (citations omitted). It also admits that some of its decisions were influenced by economic concerns instead of aesthetic ones. Def.'s Resp. to PPFUF ¶ 57. These elements raise serious questions about the copyrightability of Plaintiff's work.

#### a. Architectural Style

The parties agree that the two post offices were built in the Bureau of Indian Affairs (BIA) Pueblo Revival style,[7] and they even agree on the hallmarks of that style. *See* Pl.'s Resp. to DPFUF ¶¶ 11–12 (agreeing that the style is defined by a flat roof with parapet,[8] stepped-back roof lines,[9] wood ca-

---

6. This analysis will be discussed below at Part III.A.1.a.

7. Plaintiff often refers to this style as "territorial design" or "Territorial" style. *See, e.g.,* Deposition of John E. Mancini at 34:20–25, *available at* Appendix to Plaintiff's Motion for Partial Summary Judgment of Liability for Copyright In-

fringement (hereinafter "Pl.'s Mot.App.") Ex. B (hereinafter "Mancini Dep."); Pl.'s Resp. to DPFUF ¶ 11.

8. A parapet is a low wall guarding the edge of a roof. Def.'s X–Mot. at 36. Defendant's expert states that the use of parapets is a characteristic "universally found in Pueblo Revival style build-

nales,[10] apparent wood lintels,[11] outside walls made of stone, heavy massing,[12] and muntins [13] used to divide the glazing on doors and windows). The hallmarks of a popular architectural style, as such, are not protectable because of the definition of "architectural work" ("does not include individual standard features"), and because of the application of two copyright maxims: (1) the idea/expression dichotomy and its interplay with the merger doctrine, and (2) the concept of *scenes a faire.*

First, it is well settled that copyright protection is not available for an "idea," 17 U.S.C. § 102(b), although it is available for the *expression* of an idea. *See Feist,* 499 U.S. at 349–50, 111 S.Ct. 1282; *Atari Games Corp. v. Nintendo of Am., Inc.,* 975 F.2d 832, 839 (Fed.Cir.1992); *Matthews v. Freedman,* 157 F.3d 25, 28 (1st Cir.1998) (holding that t-shirt design was not protectable because it expressed only the same *idea* as similar t-shirts); *Liberty Am. Ins. Grp. v. Westpoint Underwriters, LLC,* 199 F.Supp.2d 1271, 1290 (M.D.Fla.2001). Therefore, it follows that, in the case at bar, Plaintiff's idea to use the BIA Pueblo Revival style in constructing the Fort Defiance Post Office is not, in itself, protectable. *See Ale House Mgmt. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 143 (4th Cir.2000) (finding that the concept of using an island to separate a seating area in architectural drawings "is nothing more than a concept, as distinct from an original form of expression, and is not copyrightable.") (citation omitted); *Wickham v. Knoxville Int'l Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir.1984) ("The 'idea' of a tower structure certainly is not copyrightable. Ideas are not protected by copyright, only expressions of ideas.") (citation omitted). Nevertheless, certain portions of the BIA Pueblo Revival style can be protectable, since the style is susceptible to multiple forms of expression. As the Ninth Circuit has held, the features that "are treated like ideas and are therefore not protected by copyright" are those that are, "as a practical matter indispensable, *or at least standard,* in the treatment of a given idea." *Ets–Hokin v. Skyy Spirits, Inc.,* 323 F.3d 763, 765–66 (9th Cir. 2003) (citation omitted) (emphasis added).

Even though Fort Defiance has certain features that are not standard to the BIA Pueblo Revival style, Plaintiff's work was further constrained by the restrictions of cost (especially the cost-determined use of faux stone) and by the USPS standard building plans, which provided the basic structure of the Fort Defiance Post Office. Given these restraints, there are a limited number of ways in which Plaintiff could have expressed the idea of the BIA Pueblo Revival Style. Therefore, the idea of the architectural style

ings." Declaration and Expert Report of Harris J. Sobin (Sep. 22, 2003) at 12, *available at* Appendix to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Cross Motion for Summary Judgment of Non–Infringement (hereinafter "Def.'s App.") Ex. 1 (hereinafter "First Sobin Report").

9. Stepped-back rooflines (also called stepped volumes) is a shorthand way of describing "structures which employ multiple building volume heights." Pl.'s Resp. to DPFUF ¶ 119.

10. There is no dispute that canales, which are also called scuppers, are "tubes penetrating a parapet wall, for the purpose of draining the roof." *See* Pl.'s Resp. to DPFUF ¶ 88; First Sobin Report at 10.

11. It is undisputed that a lintel is a small piece of wood used over an opening in a building (*e.g.,* a window or door). Usually, although not in the structures at issue, a lintel supports a wall to prevent it from collapsing. Pl.'s Resp. to DPFUF ¶ 106.

12. Defendant's expert says heavy massing occurs in a building when "(a) its walls are constructed, or at least provide the appearance of being constructed, of a heavy material such as stone, and (b) its exterior walls demonstrate an approximately equal ratio of solid wall to window or door openings." First Sobin Report at 9. Plaintiff basically agrees, defining heavy massing as occurring where "the windows are physically separate and there is a rough equivalence between window area and wall area." PPFUF ¶ 29.

13. Plaintiff defines "muntins" as "the small dividing featurettes in the inside of each larger window feature." Site Visit Tr. at 8:18–25 (Feb. 10, 2005). Defendant's expert uses a similar definition, calling muntins "profiled wood or T-shape metal glazing bars" used to separate small panes of glass in a larger window. First Sobin Report at 10.

and the expression of that style used at Fort Defiance merge—at least to some degree—with the result that the copyrightability of the Fort Defiance Post Office is affected. *See Veeck v. S. Bldg. Code Cong. Int'l, Inc.,* 293 F.3d 791, 801 (5th Cir.2002) (holding that, if an idea is susceptible to a very limited number of forms of expression, the idea and its expression will "merge" under the merger doctrine, so that the expression also will not be given copyright protection); *Hart v. Dan Chase Taxidermy Supply Co.,* 86 F.3d 320, 322 (2d Cir.1996); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 606 (1st Cir.1988) ("When the idea and its expression are not completely inseparable, there may still be only a limited number of ways of expressing the idea. In such a case, the burden of proof is heavy on the plaintiff who may have to show 'near identity' between the works at issue.") (citation omitted).

Second, *scenes a faire,* defined as "thematic concepts or schemes" that are not original to the author, *Reyher v. Children's Television Workshop,* 533 F.2d 87, 91 (2d Cir.1976), and "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic," *Autoskill,* 994 F.2d at 1494, play a role in which elements of a work are protectable by copyright. The idea of *scenes a faire* "has been most commonly employed in the literary or dramatic context," *see Southco, Inc. v. Kanebridge Corp.,* 390 F.3d 276, 287 (3d Cir.2004), but the concept has been applied in cases involving computer software copyrightability and audiovisual games. *Autoskill,* 994 F.2d at 1494 (holding that items which necessarily follow from a given theme or setting must be filtered from the court's infringement analysis); *Atari, Inc.,* 672 F.2d at 616. The concept has also been applied to architectural copyright cases by analogy. For example, in *Sturdza v. United Arab Emirates,* the District of Columbia Circuit found that *scenes a faire* must be excluded as unprotectable elements where copyrightability of an embassy design was at issue. 281 F.3d at 1295–96.

It is important to deduce which aspects of Plaintiff's design are not "as a practical matter indispensable, *or at least standard,*" in the BIA Pueblo Revival style because the merger doctrine and the doctrine of *scenes a faire* would not apply to those aspects of Plaintiff's design. Plaintiff argues that some of its design choices were not dictated by the architectural style, but instead are protectable by copyright. As Plaintiff alleges: "The ultimate appearance of the Fort Defiance Post Office is the result of numerous uncounted [sic] 'yes-no' decisions." Pl.'s Reply at 6. Plaintiff cites some of those "yes-no" decisions in its reply brief. However, the majority of those decisions were influenced by the architectural style in which Plaintiff chose to work.

(1) whether to use a visible pitched roof or a flat roof with parapet walls; (2) whether to use stone or stucco, as well as other materials, for the exterior wall façade; (3) whether to use vertical wooden posts, with or without top-mounted matching capitals, as a feature of the building entries; (4) whether to use visible window/opening header lintels, and if so, whether to employ concrete, stone, or wood materials for the lintels' final appearance; (5) whether to use decorative "canales," and whether the canales, if used, should be round or square and appear to be wood, stone, clay, or metal; (6) whether to employ ornamental wood vigas protruding through the exterior wall surfaces; (7) whether to employ wood, aluminum, or hollow metal steel windows, doors, and frames; (8) whether to use true divided lights (i.e., mullions) or use decorative applied muntin grilles in all, only some, or none of the glass doors and windows; and (9) whether to use exposed authentic wood latillas or flat wood tongue and groove pine boards in the ceiling soffits of the main and secondary entryways.

*Id.* at 5–6. Plaintiff also argues that it decided to use recessed windows, Site Visit Tr. at 55:19–23 (Feb. 11, 2005); that it made the "carefully considered and painstakingly long decision" to use faux stone that was " 'rough cut' and 'laid up in a random arrangement,' as opposed to a repeating pattern of some type," Pl.'s Reply at 6; and that it decided not to use "earth-colored exterior walls" or "sloped or 'battered' walls at the building's corners," *see* PPFUF ¶¶ 15, 17.

However, most of the "decisions" that Trek claims to have made were actually required as a part of the BIA Pueblo Revival style. For instance, Plaintiff has agreed that muntins must be used in windows to stay true to Pueblo Revival style, see Pl.'s Resp. to DPFUF ¶ 96; wood canales are a "standard" part of a Pueblo Revival structure, see id. ¶ 88; flat roofs are "universally found" in the style, see id. ¶ 117; and latilla ceilings [14] are "common" in Pueblo Revival buildings, see id. ¶ 82. In addition, Plaintiff admits that outside walls made of stone and apparent wood lintels are hallmarks of the BIA Pueblo Revival style, see id. ¶¶ 11–12, and that wooden posts could not have been used on Fort Defiance's porch because of a building code that prohibits it, see Site Visit Tr. at 33:21–34:3, 39:6–10 (Feb. 11, 2005). Further, Defendant claims that the decision to use canales with square cross-sections was dictated by use of the BIA Pueblo Revival Style, Def.'s Resp. to PPFUF ¶¶ 14, 32; and that Plaintiff could not have used windows that were flush with the walls because recessed windows were required by the USPS standard design plans, Site Visit Tr. at 56:3–7 (Feb. 11, 2005). In addition, Defendant says that rough-hewn, randomly-laid stone is "universally found" in the BIA Pueblo Revival style, Site Visit Tr. at 19:17–21 (Feb. 11, 2005); and that "[t]here's been no evidence in the record that suggests that th[e] effect [at the building's corners] isn't just a natural result of using faux stone," Site Visit Tr. at 20:14–22 (Feb. 11, 2005).

But Plaintiff is correct that some of its decisions were true original choices and are deserving of copyright protection. For example, Plaintiff chose to use canales that are not in open-topped notches, as some of the BIA buildings are, Def.'s Resp. to PPFUF ¶ 44; it chose the color of the exterior walls; and it chose the style, shape, and color of the muntins and lintels, Oral Arg. Tr. at 19:17–21:11 (Feb. 11, 2005). Plaintiff also decided to refrain from using vigas, which are still used in some BIA Pueblo Revival style buildings, even though, according to Defendant, they "were dropped out for the vast majority" of those buildings. Site Visit Tr. at 59:18–60:6 (Feb. 11, 2005). Furthermore, although both parties agree that latilla ceilings are common in BIA Pueblo Revival buildings, there has been no argument that latilla ceilings are, "as a practical matter indispensable, or at least standard."

When Plaintiff's work is examined, it becomes clear that few protectable architectural elements exist in the Fort Defiance Post Office, a fact that is emphasized to an even greater extent after expert testimony is taken into account. Although expert testimony is not permitted for the purpose of determining legal infringement, it is admissible to inform the Court about the subject matter at issue.[15] See Kohus, 328 F.3d at 854, 856 (holding that expert testimony is admissible to determine scenes a faire ); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43 (9th Cir.1994) (expert testimony admissible to determine if features are protected); Autoskill, 994 F.2d at 1494–96 (expert testimony allowed when determining the scope of the public domain). Plaintiff chose not to present expert testimony, but Defendant did, using the expertise of Professor Harris J. Sobin. To the extent that Defendant's arguments are supported by the opinions of Professor Sobin, the Court is more inclined to believe Defendant's arguments.

One of Professor Sobin's conclusions, made in his second report, is that "the specific combination of design elements used on the Fort Defiance Post Office's facade is standard in this type of architecture and matches exactly several BIA stone buildings in Window Rock, Arizona." Defendant's Reply to Plaintiff's Response to the Defendant's Cross–Motion for Summary Judgment (hereinafter "Def.'s Reply") at 9 (citing Expert Report of Harris J. Sobin: Substantial Similarity Analysis at 4, available at Def.'s App. Ex. 2 (hereinafter "Second Sobin Report")).

---

14. Defendant's expert defines "latilla" as the "small-scale lowest element of a ceiling ... that spans from one beam to the next, and it can be made out of various materials." Deposition of Harris J. Sobin at 72:22–73:11, available at Def.'s App. Ex. 15 (hereinafter "Sobin Dep.").

15. Although Plaintiff once questioned the admissibility of expert testimony, it now admits that such testimony can be used to educate the Court. See Oral Arg. Tr. at 25:25–26:9 (Feb. 11, 2005).

Plaintiff, however, argues that, "[w]hile Trek Leasing's design decisions were influenced by existing nearby buildings on the Navajo Reservation, it clearly and unmistakably did not copy the appearance of any building." Pl.'s Reply at 6. This statement appears to be true, as the Court determined from a site visit, but it does not bear on the issue at hand, since Plaintiff has already agreed that it used some aspects of the BIA Pueblo Revival style. Plaintiff also claims that stepped-back roof lines and muntins occur in architectural styles other than Pueblo Revival. Plaintiff's Proposed Findings of Uncontroverted Fact (hereinafter "PPFUF") ¶¶ 8–9. Once again, this argument is irrelevant, as the question is not which elements in the Pueblo Revival style are *unique to that style,* but rather which portions of the work are "as a practical matter indispensable, or at least standard" to the Pueblo Revival architectural style. *Ets–Hokin,* 323 F.3d at 765–66 (citation omitted).

The Court finds Defendant's expert to be convincing; since Plaintiff chose not to present expert testimony, it's case is made weaker. Thus, it is clear to the Court that few of Plaintiff's alleged "choices" that it made while building Fort Defiance appear to be true "choices." But, as discussed above, Plaintiff did make some true decisions and not all of the aspects of Fort Defiance's architecture lack originality.

### b. Standard Post Office Building Design USPS 65A

There is no dispute that the USPS standard drawings make up at least 50% of the Fort Defiance design.[16] Pl.'s Resp. to DPFUF ¶ 59. Plaintiff however, argues that "[s]ignificant modifications to, or deviations from, the dictates of an SSBD drawing set are [permitted] to accommodate the specifics of a given building." *Id.* ¶ 4. Defendant disagrees, claiming that architects who use the SSBD drawings "must conform to the exacting requirements dictated by the[m]." DPFUF ¶ 4. The parties agree, though, that Plaintiff has no rights to the number, place-

ment, and shape of the windows; placement and design of the entryways; placement and design of the loading dock; and placement of exterior walls. *See* Pl.'s Resp. to DPFUF ¶¶ 57, 60. In addition, Plaintiff has conceded that it has no rights "in the dimensions of the 'footprint' or floor plan of the Fort Defiance P.O. work," Pl.'s Mot. at 20, 31. As a result, these elements of Plaintiff's design are not copyrightable and therefore must not be considered in the Court's infringement analysis.

### c. Efficiency, Necessity, and External Factors

At least two Circuit Courts of Appeal have held that elements dictated by efficiency, necessity, or external factors must also be filtered out of the court's infringement analysis. *See, e.g., Kohus,* 328 F.3d at 856; *Matthew Bender & Co. v. West Publ'n Co.,* 158 F.3d 674, 682 (2d Cir.1998) (holding that, where external factors limit options in a work, creative spark is missing and no copyright attaches); *Computer Assocs.,* 982 F.2d at 707–08. This Court agrees with the reasoning set forth in those cases.

As noted above, Plaintiff admits that some of the design choices were affected by economic, not aesthetic, factors. Def.'s Resp. to PPFUF ¶ 57. For example, the parties agree that Plaintiff could not use real stone, because that would have been prohibitively expensive, and that anyone trying to create the look of real stone would be limited to a faux or cultured stone exterior. Pl.'s Resp. to DPFUF ¶¶ 15–16, 36. Further, the use of concrete masonry units ("CMUs") to build the exterior walls was also done for primarily economic reasons. Pl.'s Resp. to DPFUF ¶¶ 124–25. Plaintiff has alleged that the use of faux lintels made out of wood is an element of its protectable expression in Fort Defiance, *see id.* ¶ 77. *But see id.* ¶ 79 (admission by Plaintiff that wood lintels are a hallmark of the BIA Pueblo Revival Style). Nevertheless, Plaintiff also agrees that it could not use real (structural) wood lintels to secure a faux stone structure due to building

---

16. Mr. Nikich of APMI has said that the USPS standard plans constitute around 50–60% of the development of a post office. Deposition of Miomir Nikich at 40:3–6, *available at* Pl.'s Mot. App. Ex. E, Def.'s App. Ex. 14 (hereinafter "Nikich Dep."). Defendant claims that 70% of the Fort Defiance work was dictated by the USPS 65A plans. Defendant's Proposed Findings of Uncontroverted Facts (hereinafter "DPFUF") ¶ 59.

codes. *Id.* ¶ 17. Thus, Defendant claims that Trek decided to use faux lintels "just to match the style of architecture." DPFUF ¶ 77. The combination of the inability to use structural lintels and the need to use wood lintels to match the architecture leads to the conclusion that the utilization of wood lintels that do not actually support the structure is not a protectable expression. In addition, the location of the lintels is unprotectable because, "to stay true to the Pueblo Revival style," Trek needed to use a lintel over each opening (*e.g.*, windows and doors), and, according to the USPS drawings, the placement of windows and doors was dictated. *See* Pl.'s Resp. to DPFUF ¶¶ 60, 79. Furthermore, in that style, the parapet must be placed along the roof's edge, and the placement of that edge is determined by the location of the walls, which is determined by the USPS drawings. *See id.* ¶¶ 60, 70. Therefore, the parapet placement is also unprotectable expression (as is the location of the cap, which sits atop the parapet). *See* DPFUF ¶ 70.

### 2. Nature of Plaintiff's Copyright

As demonstrated above, there are many aspects of Plaintiff's copyrighted work that are not deserving of copyright protection, since most of the elements Plaintiff used in designing the Fort Defiance Post Office were dictated by the architectural style in which Plaintiff chose to work, the underlying USPS 65A plans, or the requirements of efficiency, necessity, or external factors.

As discussed above, Plaintiff's copyright is limited by the definition of "architectural work," and by the application of the idea/expression dichotomy, the merger doctrine, and the concept of *scenes a faire*. Although these considerations exclude much of Plaintiff's work, and although the elements discussed in Parts III.A.1., *supra*, cannot be considered in the infringement analysis, it is important to be mindful that the lack of protection for the use of these elements is not indicative of the protectability of other decisions related to those elements. For example, although the use of faux stone was

dictated by economic limitations, Plaintiff's choices regarding the color and type of faux stone may be protectable. *See Feist*, 499 U.S. at 345, 111 S.Ct. 1282 (holding that copyright protection is available for expression that is original to the creator); *Apple Computer*, 35 F.3d at 1444 (holding that, where "[a] programmer has only two options for displaying more than one window at a time ...", protectable substantial similarity cannot be based on the mere use of overlapping windows, although, of course, Apple's *particular expression* may be protected") (emphasis in original).

Because of the constraints of the BIA Pueblo Revival style, and the other external factors, the copyright of Plaintiff's architectural work is necessarily a "thin" one. Initially, the Supreme Court held in *Feist* that, "the copyright in a factual compilation is thin." 499 U.S. at 349, 111 S.Ct. 1282. The Court then expanded this idea of a "thin" copyright to cover ideas that are "free for the taking" and could be " 'divorced from the context imposed by the author, and restated or reshuffled.' " *Id.* (quoting Jane C. Ginsburg, Creation and Commercial Value: Copyright Protection of Works of Information, 90 Colum. L.Rev. 1865, 1868 (1990)).[17] Often, this results in the organization of the elements being the only protectable aspect of the copyrighted work. *See Transwestern Publ'g Co. v. Multimedia Mktg. Assocs.*, 133 F.3d 773, 776 (10th Cir.1998) (affirming finding of no infringement using test for thin copyright protection in a factual compilation case). In *Well–Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, the Eastern District of New York expanded the idea of thin copyright protection to a case involving three-dimensional objects, in that case, dolls. (Where "the expression is nearly indistinguishable from the idea itself," or where "the work is composed of elements in the public domain, ... it is only the organization of those elements that is protectable") 210 F.Supp.2d 147, 163 (E.D.N.Y.2002), *aff'd*, 354 F.3d 112 (2d Cir.2003). The Court sees no reason not to extend this concept to a three-dimensional work in the form of a building: Plaintiff's

---

17. The Court believes that works of information that are built on frameworks of unprotectible fact may be analogized to architectural works that are built on frameworks of unprotected elements.

work is composed almost entirely of elements that originate in either the USPS drawings or the BIA Pueblo Revival architectural style. The Court thus holds that Plaintiff's work, having some original aspects but taking much from other sources, is covered only by a "thin" copyright.

## B. Substantial Similarity

Now that the Court has determined that Plaintiff does have at least a thin copyright in its architectural work, the next step is to determine whether illegal copying has occurred.[18] In the process of determining whether Plaintiff's work is copyrightable, the Court filtered out the non-protectable portions of Plaintiff's work. To determine whether the Kayenta post office infringes the Plaintiff's work, the protectible elements of the Plaintiff's work must be compared to the Kayenta edifice. Defendant argues that, after filtration, and when the Kayenta Post Office is viewed in its entirety, there is no copyright infringement because Kayenta, as compared to Fort Defiance, is "a visually lighter structure with much greater emphasis on the voids created by the openings in the building." Def.'s X–Mot. at 14–15. Furthermore, Defendant claims that the similarities between the structures derive from the use in both of the Pueblo Revival style and the underlying USPS plans: "[O]nce the idea to use the BIA Pueblo Revival style on a USPS structure was made the look and feel of that structure was basically set." Id. at 30. Plaintiff, on the other hand, avers that Defendant "goes way overboard in its 'abstract-filtration' analysis," claiming that, under that analysis, "no person could ever again enforce a copyright on an exterior building design that a hired expert labels 'Pueblo Revival.'" Pl.'s Reply at 7.

### 1. The "Ordinary Observer" Test

■■■ A test for copyright infringement that has met with general acceptance by courts is whether "the ordinary observer, unless he set out to detect the disparities [between the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir.1960). Since the ordinary observer test is an objective one, expert testimony may not be used to determine substantial similarity. See Stromback v. New Line Cinema, 384 F.3d 283, 295–96 (6th Cir.2004) (holding that expert testimony will not generally be necessary unless the subject matter is "complex or technical"); Dawson v. Hinshaw Music, Inc., 905 F.2d 731, 735–36 (4th Cir. 1990); Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir.1946).

When applying the ordinary observer test, it is important to remember that, before substantial similarity can be found, the expression taken from Plaintiff's work must be "qualitatively important." Country Kids, 77 F.3d at 1287; see Computer Assocs., 982 F.2d at 710, 714–15 (holding that literal copying of a plaintiff's work may occur without liability under the de minimus exception); Concrete Mach., 843 F.2d at 608 ("[I]t is only when the copying is sufficiently extensive that infringement occurs."); Churchill Livingstone, Inc. v. Williams & Wilkins, 949 F.Supp. 1045, 1053 (S.D.N.Y.1996) ("[The] court must determine the copied 'portion's relative importance with respect to the plaintiffs' overall work.") (quoting Computer Assocs., 982 F.2d at 710).

In addition, as Plaintiff avers, the Court should examine "the similarities, rather than the differences, that inform whether the 'total concept and feel' of the works and their 'aesthetic appeal' is the same." Pl.'s Reply at 23 (quoting Atkins v. Fischer, 331 F.3d 988, 993–94 (D.C.Cir.2003) (internal citations omitted)). As Plaintiff also notes, "Whether differences negate infringement depends upon whether the differences so outweigh similarities that the similarities can only be deemed inconsequential within the total context of the copyrighted work." See Pl.'s Reply at 23 (citing LaJoie v. Pavcon, Inc., 146 F.Supp.2d 1240, 1247 (M.D.Fla.2000) (interior quotation omitted)). However, as Nimmer states: "Insofar as this suggests

18. The court has already determined that the Kayenta post office was copied from the Ft. Defi-ance post office. See Part II, supra.

that liability may turn, in some degree, on the importance of the original material that defendant adds to the copied material, this is an erroneous statement of the law. It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown." Nimmer on Copyright § 13.03(B)(1)(a) (citing, *inter alia, Walt Disney Prods. v. Air Pirates,* 581 F.2d 751, 756 (9th Cir.1978) (rejecting as "much-criticized and abandoned" an asserted defense that "the part copied was not a substantial part of the defendant's work.")).

Although the "sine qua non of the ordinary observer test ... is the overall similarities rather than the minute differences between the two works," *Atari, Inc.,* 672 F.2d at 618 (citations omitted), "[t]he admission of evidence of differences as between plaintiff's and defendant's works is not improper. If the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance, either quantitatively or qualitatively, then no infringement results." Nimmer on Copyright § 13.03(B)(1)(a) (citing, *inter alia, Howard v. Sterchi,* 974 F.2d 1272, 1276 (11th Cir.1992) (holding that the plaintiffs had not established substantial similarity because, "[i]n architectural plans of [a] type [in which there are limited ways to build], modest dissimilarities are more significant than they may be in other types of art works.")).

### 2. The "More Discerning" Observer Test

 Since Plaintiff's work incorporates sources other than its original expression, the basic ordinary observer test does not apply. Instead, the Court must apply a "more discerning" observer test. *See Boisson v. Banian, Ltd.,* 273 F.3d 262, 272 (2d Cir. 2001); *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1002 (2d Cir.1995); Nimmer on Copyright § 13.03(A) ("[M]ore similarity is required when less protectable matter is at issue."). Even Plaintiff agrees that this more stringent test might be required in the case at bar: "Since the Fort Defiance design

taps the body of public domain design elements, perhaps the analysis of its originality may call for a 'more discerning' ordinary observer test" for substantial similarity. Pl.'s Reply at 21. Furthermore, as the Court has held that Trek Leasing's copyright is a "thin" copyright, the Fort Defiance work will only be protected from "nearly verbatim copying or a showing of 'supersubstantial similarity.'" *Transwestern Publ'g,* 133 F.3d at 776 (" '[S]upersubstantial' similarity must pertain when dealing with 'thin' works.") (citation omitted); *Concrete Mach. Co.,* 843 F.2d at 606 ("When the idea and its expression are not completely inseparable ... the burden of proof is heavy on the plaintiff who may have to show 'near identity' between the works at issue."); *see also* Nimmer on Copyright § 13.03(A) (" '[S]upersubstantial' similarity must pertain when dealing with 'thin' works.").

As one court has held, "the discerning observer should distinguish between protectable and unprotectable elements, put the unprotectable elements out of mind, and determine whether the remainders of each work, taken together, are similar in total concept and feel." *Well–Made Toy,* 210 F.Supp.2d at 162. "At the limiting case of 'the thinnest of copyright protection,' entire duplication would be required. In line with that approach, the Ninth Circuit has held, 'When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.'" Nimmer on Copyright § 13.03(A) (quoting *Apple Computer,* 35 F.3d at 1439).

Nevertheless, Plaintiff argues that, "in applying this test, 'a court is not to dissect the works at issue into separate components and compare only the copyrighted elements'" because that would " 'result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectable elements ....'" Pl.'s Reply at 21 (quoting *Boisson,* 273 F.3d at 272). However, as the Seventh Circuit has held: "While dissection is generally disfavored, the ordinary observer test, in application, must take into account that the copyright laws preclude appropriation of only those elements of the

work that are protected by the copyright." *Atari, Inc.*, 672 F.2d at 614; *see also Feist,* 499 U.S. at 361, 111 S.Ct. 1282. Thus, the Court finds that the correct approach is to compare the elements of the works separately, but to also examine the works as a whole because,[19] according to Nimmer: "If originally combined, a selection or arrangement of underlying materials that are themselves unoriginal may support copyright protection." Nimmer on Copyright § 3.04 (citing *Gemini Indus., Inc. v. Labtec Enters. Inc.*, 1993 WL 580807, 31 U.S.P.Q.2d 1776, 1779, 1779 n. 2 (W.D.Wash.1993)); *see Feist,* 499 U.S. at 358, 111 S.Ct. 1282 (applying this principle to a compilation of facts); *Boisson,* 273 F.3d at 273 (comparing Plaintiff's quilt with an allegedly infringing quilt "on the basis of the arrangement and shapes of the letters, . . . the quilting patterns, the particular icons chosen and their placement").[20] Furthermore, comparing the works as a whole is especially important when examining a three-dimensional work: "A graphic or three-dimensional work is created to be perceived as an entirety. Significant dissimilarities between two works of this sort inevitably lessen the similarity that would exist between the total perceptions of the two works." *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 241 (2d Cir.1983).

### 3. Comparison of the Elements

 Defendant admits that, "[a]t first blush, Kayenta and Fort Defiance look similar." Def.'s X–Mot. at 13. However, Defendant argues that, once the elements taken from the USPS drawings and the BIA Pueblo Revival architectural style are removed, no reasonable fact finder could find that Kayenta is substantially similar to Fort Defiance. *Id.* at 14–15. Given the thin copyright that the Court has found in the Plaintiff's work and for the reasons set forth below, the Court agrees that the Kayenta post office is not sufficiently similar to the Ft. Defiance post office to warrant a holding of copyright infringement.

### a. Stone and Mortar

The use of stone is not protectable because it was dictated by the architectural style. Furthermore, the use of faux stone is not protectable because it was dictated by financial considerations. In addition, the parties agree that there is no copyright protection for the stone's pattern, because it is laid in a random fashion. *See* Site Visit Tr. at 4:19–23 (Feb. 11, 2005); Deposition of Marco DeFilippis at 127:5–13, *available at* Pl.'s Mot.App. Ex. C *and* Def's App. Ex. 9 (hereinafter "DeFilippis Dep."). Therefore, the only aspects of the stone and mortar that are protectable are the color and texture/pattern.

When examining these two remaining elements, it is clear that Kayenta did not match the color of Fort Defiance's stone and mortar. The mortar and stone are much lighter on Kayenta, and Kayenta uses a burnished look on its stone. *See* Pl.'s Resp. to DPFUF ¶¶ 84–85; Site Visit Tr. at 8:16–20 (Feb. 11, 2005); Second Sobin Report, pictures 15–16. Defendant considers this important because the color gives Kayenta a distinct appearance. Def.'s X–Mot. at 34 (citing *Knitwaves,* 71 F.3d at 1004 (considering color when conducting its infringement analysis)). However, Defendant did, like Plaintiff, utilize a Cobble Field pattern of faux stone for its outside walls. Oral Arg. Tr. at 45:19–46:5 (Feb. 11, 2005).

On this element, the only aspect that Defendant has legally copied is the type of the faux stone used at Fort Defiance. Although the stone is a "qualitatively important" aspect of Plaintiff's work, the fact that the stones are different colors and that one is burnished while the other is not leads the

---

19. Some courts determine substantial similarity based on a "total look and feel" test. *See, e.g., Boisson,* 273 F.3d at 272. However, as Defendant notes, "in no case may unprotectable expression be included in the 'look and feel' comparison." Def.'s Reply at 6 n. 3 (citing, *Atari Games Corp.*, 975 F.2d at 839; *Meade v. United States*, 27 Fed.Cl. 367, 371 (1992)).

20. The Court does not believe that Plaintiff will disagree with this approach, as Plaintiff suggested at oral argument that the Court "need[s] to compare lentil [sic] to lentil [sic]; scupper to scupper, muntin to muntin; stone facade to stone facade. And, then at that level of analysis, determine whether or not there is going to be a finding of infringement." *See* Pl.'s Reply at 25–28; Oral Arg. Tr. at 28:21–25 (Feb. 11, 2005).

Court to conclude that there are not enough similarities for the Court to say that Defendant's stone is sufficiently substantially similar to Plaintiff's, *see Country Kids,* 77 F.3d at 1287–88, under the "more discerning" observer test.

### b. Canales

The parties agree that both post offices have "fail-safe" canales that project from the building less than one foot and pass through close-topped holes penetrating the parapet. The canales are quite different in appearance, however. The canales at Fort Defiance consist of three separate wooden pieces, a style of canales that the parties have agreed is a hallmarks of the BIA Pueblo Revival style. The canales at Kayenta, though, were constructed in a manner that is outside of that style, being made of bright, fully enclosed galvanized metal supported by a lightly colored stone piece underneath. Defendant argues that the brighter canales at Kayenta accentuate the lighter stone and the "distinctively different, lighter form" at Kayenta. DPFUF ¶ 92. Nevertheless, Plaintiff argues that only "schooled architects" might recognize the "subtle, nearly academic difference" between the canales at Fort Defiance and those at Kayenta. Pl.'s Reply at 26. In addition, Plaintiff claims that, "[f]rom the perspective of a lay observer, the canales are the same on both buildings, i.e., short, square, and located at the same positions on the building." *Id.* The Court is not convinced of Plaintiff's position on this matter. After seeing the two post offices, the Court could immediately distinguish the sets of canales. Although both sets are short and square, the differences clearly outweigh the similarities, especially since, contrary to Plaintiff's argument, not all of the canales are placed in the same locations on the two buildings. *See* Site Visit Tr. at 31:18–21, 36:9–11 (Feb. 11, 2005); Second Sobin Report, pictures 21–22.

As Plaintiff argues, Defendant could have used canales that pass through slits in the parapet, instead of through close-topped holes. They also could have used longer canales. However, the color, design, and placement of the canales on Kayenta is quite different from those same aspects at Fort Defiance. Therefore, the Court finds that the canales at Kayenta are not substantially similar enough to those at Fort Defiance to constitute copyright infringement.

### c. Muntins

There is no dispute that both buildings have muntins at every door and window, nor is there dispute that the placement of the doors and windows is required by the USPS plans. However, the muntins at Kayenta are distinct from those at Fort Defiance: they are bright white and located on the exterior of the windows at Fort Defiance but muted grey and sandwiched between the panes of glass at Kayenta. *See* Pl.'s Resp. to DPFUF ¶¶ 98–99. Nevertheless, Plaintiff claims that the "subtle differences in shades of color . . . would go largely unnoticed by an ordinary lay observer." Pl.'s Reply at 26. As with the canales, however, the Court must disagree. Upon viewing the works in person, the Court can see a difference in the color of the muntins that has a significant effect on the appearance of the structures. Plaintiff views this, and many of the other differences discussed in this section, as being "trivial detail[s]." *Id.* at 27. However, since this work is covered by a thin copyright only, the Court must look closely at how much of the details were copied, as many of the qualities that Plaintiff would undoubtedly refer to as "more important" have been taken from works in the public domain and are therefore exempt from copyright protection. As one of the few protectable aspects of the muntins is their color, the Court cannot find that the muntins at Kayenta are substantially similar enough to the ones at Fort Defiance.

### d. Walls and Roof

It is undisputed that both post offices have parapets and capstones, flat, stepped back roofs, and walls made of CMUs. It is also undisputed that both buildings employ heavy massing. However, these items cannot be considered in the Court's substantial similarity analysis because the first three are elements of the BIA Pueblo Revival style and CMUs were required due to economic considerations. Furthermore, the parties also agree the roof designs and drainage patterns are vastly different between the two post offices, and that the lower parapets are the

same height, but the main parapet is a different height on each building: 16 feet at Fort Defiance and 17 feet, 4 inches at Kayenta. Under the "more discerning" ordinary observer test, there is simply not enough substantial similarity here.

### e. Window Sills and Lintels

It is uncontested that the window sills and lintels on both post offices project slightly from the wall and that the lintels are visible and made of wood. It is also uncontested that the color of the lintels is dark brown on Fort Defiance and a light, natural-colored hue at Kayenta. This color difference is significant because Plaintiff admits that the color of the lintels can "impart a distinct look to a building." Pl.'s Resp. to DPFUF ¶ 111. Plaintiff further admits that the lintel color is a "design choice of an architect," and that Trek "exercised some discretion on what color stone would be used." Site Visit Tr. at 21:24–22:1, 22:24–25 (Feb. 11, 2005). Plaintiff's own architect, Mr. DeFillipis, did not use natural-colored wood lintels due to his feeling that the color of the wood would alter Fort Defiance's look too drastically. Thus, it seems clear that the color of the lintels plays an important role in determining substantial similarity.

However, Plaintiff claims that "Defendant's unabashed duplication of all other choices made by Trek Leasing's [sic] concerning [the lintels] far outweigh the distinctions in hue." Pl.'s Reply at 28. Plaintiff argues that the following are similar aspects of the lintels of both works: (1) both are "faux exposed lintel[s]"; (2) both "look[ ] like wood rather than stone"; (3) they have the same shape; (4) both "project slightly from the surface of the exterior wall"; and (4) both have "a natural, earth-hued color." *Id.* Although it is true that each building's lintels have the above characteristics, the faux exposed lintel was necessary as a result of a combination of the location of the windows, dictated by the USPS plans, and the BIA Pueblo Revival style. Further, the parties agree that wood lintels are common in BIA Pueblo Revival architecture, and the colors of the structures' lintels, as discussed above, are very different.

However, the shape and projection of the lintels from the wall at Fort Defiance is protectable expression, which Defendant has also used on the Kayenta post office. In addition, Defendant's use of canted window sills made of stone is substantially similar to Fort Defiance's, and Defendant has presented no evidence that stone, canted window sills are common in the BIA Pueblo Revival style or the USPS plans. Nevertheless, these similarities clearly do not rise to the level of "virtual identity" for thin copyrights. *See* Nimmer on Copyright § 13.03(A) (quoting *Apple Computer,* 35 F.3d at 1439).

### f. Ceilings and Porches

The ceilings and the porches at Kayenta are not substantially similar enough to Plaintiff's work to rise to the level of "virtual identity." First, the outdoor latilla ceilings, although the same at both post offices, have been recognized, even by Plaintiff, as being common to the BIA Pueblo Revival style, even though they are not standard to the style. Second, the porch on the southern elevation of each post office is not protectable because it is required by the USPS drawings. The particular aspects of the porch could be substantially similar if the parties used the same expression. However, that is not the case here. The Kayenta Post Office employs an enclosed porch, with two windows on the front, one on the west side, and a door on the east side. There are lintels over each opening and four canales (two on the front and one on each side). Furthermore, there is no designation of the name of the post office on the porch. In contrast, the Fort Defiance Post Office is open and thus has no windows, doors, or lintels. Although Fort Defiance employs canales, there are only three of them, one on each side and one in front. In addition, the name and location of the post office are indicated on the front of the porch. As a result, the Court cannot find that the ceilings or porches at Kayenta are sufficiently substantially similar to the ones at Fort Defiance.

### g. Overall Structure

As Nimmer notes, "Although each [element] in isolation might be subject to exclusion from the court's calculus, the conceptual interrelationship of [elements] should remain

[redacted]

present for the court's analysis even after filtering out particular concrete objects, thus subjecting the defendant to potential liability should copying of those elements be proven." Nimmer on Copyright § 13.03(F)(5) (citations omitted). Nimmer also states, "If originally combined, a selection or arrangement of underlying materials that are themselves unoriginal may support copyright protection." Nimmer on Copyright § 3.04 (citing *Gemini,* 1993 WL 580807, 31 U.S.P.Q.2d 1779, 1779 n. 2 (W.D.Wash.1993)); *see also M. Kramer Mfg. Co. v. Andrews,* 783 F.2d 421, 439 (4th Cir.1986). Plaintiff argues that, "[s]tripped of any differences in color, the Fort Defiance and Kayenta Post Offices have practically identical overall look and feel." Pl.'s Reply at 6. Although this appears to be true on the surface, it is not true under the more discerning observer test. As Defendant argues, when the structures at issue are viewed as a whole, a finding of no infringement is proper because Kayenta is "a visually lighter structure [than Fort Defiance] with much greater emphasis on the voids created by the openings in the building." Def.'s X–Mot. at 14–15. Further, Defendant notes that, although Plaintiff's arrangement and combination of the elements of Fort Defiance could be protected, they are not protectable in this case because the arrangement is dictated by the USPS standards and because the combination of elements is standard in the BIA Pueblo Revival style. *See* Site Visit Tr. at 41:9–42:3 (Feb. 11, 2005).

The Court must agree with Defendant. Given the dictates of the architectural style and the basic USPS plans, Plaintiff had little room to change the selection and arrangement of the materials: muntins must be placed in windows; lintels must go over doorways and windows; the capstone must sit atop the parapet; and canales must be situated to drain the roof. Since there is almost no originality in the selection and arrangement of the Fort Defiance Post Office, and since there are few similarities between the post offices when the non-protectible elements of Plaintiff's structure are removed from the analysis, the Court must find that Defendant's architectural work is not substantially similar to Plaintiff's, under the more discerning observer test.

## IV. Conclusion

Almost all of the similarities between the two buildings can be attributed to two sources: (1) the USPS drawings, and (2) the BIA Pueblo Revival Style. Since precedent prevents the Court from consideration of uncopyrightable portions of the copyrighted work, and there are few similarities after those portions are filtered, there is little original work that Defendant could have copied. Furthermore, the lack of substantial similarity, under the heightened more discerning observer test, between the remaining parts of the original work and those of the allegedly infringing work, makes clear that there was no copyright infringement in this case Therefore, this Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

The Clerk of the Court is instructed to enter judgment for Defendant. Furthermore, since Plaintiff has withdrawn its claim for infringement of its copyrighted drawings, the Court hereby DISMISSES that claim with prejudice. Pl.'s Reply at 8–9.[21]

[redacted]

21. This document was reissued for publication on July 7, 2005, pursuant to a Joint Report filed by the parties, dated July 6, 2005. The Joint Report stated that the opinion, originally filed under seal, could be published in full.