# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3010

_____

Tom J. Frye,

               Appellant,

     v.

YMCA Camp Kitaki; Russ Koos,
Program Director,

               Appellees.

\*     Appeal from the United States
\*     District Court for the
\*     District of Nebraska.
\*
\*     [PUBLISHED]

_____

Submitted: April 12, 2010
Filed: August 20, 2010

_____

Before LOKEN, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Tom Frye appeals the district court's[1] conclusion that the YMCA's play *KnightQuest* does not infringe the copyright for his play *Kastleland*. We hold that the district court's finding that the two plays are not substantially similar is not clearly erroneous. Consequently, the YMCA did not infringe Frye's copyright, and we affirm.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

I.

The YMCA operates a summer camp in Nebraska called Camp Kitaki. The camp features experience-based learning programs called "adventure trails." Frye is a freelance author, who had written a medieval-themed play for use at police camps and in schools. In 1986, he developed the play into an adventure trail called *Kastleland* for use at the YMCA's Camp Kitaki. The program was performed from 1987 through 1998. Multiple and differing scripts appear in the record, and Fyre testified that the play developed over time and each production was unique.

*Kastleland* commences with a scene at a campfire. Stock medieval characters—including a bard (a Robin Hood like character), a knight, and a female character—are present and speak among themselves and to the campers about impending danger from seven dragons. The result is that the campers become involved in the play, agreeing to aid the medieval characters by going on a quest. On the quest, campers undertake seven challenges and gain a "word of power" upon completion of each challenge. One challenge involves swordplay and they earn the word "courage." Two other challenges involve target shooting and the campers earn the words "love" and "self-control." A fourth challenge involves using shields to avoid getting wet while crossing a battlefield, and campers earn the word "nobility" to defeat the dragon of selfishness. In the second version, campers meet at the "Round Table" and are given a talk about drug abuse. Finally, there is a closing campfire scene where the seven words of power are used to defeat the seven dragons. In some versions of *Kastleland*, the words of power save one of the characters from drug abuse.

In 1998, Frye ended his association with the YMCA, and a dispute arose over whether the YMCA could continue to produce *Kastleland*. The dispute was resolved through a settlement agreement and a stipulated judgment in federal court, wherein the

YMCA agreed not to infringe on Frye's copyright in *Kastleland*, and Frye agreed not to enter onto YMCA property without permission.

Thereafter, the only adventure trail performed at Camp Kitaki was a jungle-themed program,"*Jungleland*." In 2005, Russ Koos was hired as camp director, and he wrote a medieval-themed adventure trail called *KnightQuest*. Camp Kitaki introduced the new program in the summer of 2007.

*KnightQuest* opens at a campfire scene where two siblings, a friend, and a wizard talk. An antagonist appears, supported by four "shadow lords." The shadow lords have a creed featuring four words—hate, lies, disrespect, and irresponsibility. The wizard enlists the protagonists and the campers in a quest to become knights so they can defeat the shadow lords and their queen. On the quest, the children engage in "trials of the code," where they learn four YMCA "core values." Two trials teach responsibility. Another trial involves swordplay and teaches truthfulness. Another involves shielding each other from thrown missiles and teaches caring. A final trial involves target shooting, and the campers are rewarded for a successful shot by earning a scroll bearing a saying about respect. Each trial ends with interactive activities to reinforce the specific YMCA core value learned, along with some closing words by the facilitator. At the end of the activities the campers learn the knights' code (which reflects the four YMCA core values) and are knighted. *KnightQuest* concludes with a closing campfire where the new knights recite their code, reforming the shadow lords.

In May 2008, Frye filed a complaint in federal district court in Nebraska. He later moved the court to hold the YMCA in contempt for violating the stipulated judgment entered in the 1998 lawsuit. The court allowed discovery and held a hearing. Frye has never seen the production of *KnightQuest*, and before filing this lawsuit he had not seen a script for *KnightQuest*. Frye testified about his *Kastleland*.

He also called a witness who saw a production of *Kastleland* as an eight-year-old camper and a production of *KnightQuest* ten years later.

The district court found that "the characters in *Kastleland* are skeletal archetypes and the plot is largely composed of *scènes à faire*," (Add. at 4), and that Frye "failed to prove that *KnightQuest* is substantially similar to any protected expression in his *Kastleland* copyright," (Add. at 7). Consequently, the district court denied the motion for contempt and dismissed Frye's 2008 lawsuit. Frye appeals.

II.

Frye argues that the district court wrongly concluded that *KnightQuest* does not infringe on his copyright to *Kastleland*. To establish his claim for copyright infringement in the absence of direct evidence of copying, Frye must prove: (1) his ownership of the copyright to *Kastleland*, (2) access by the YMCA to *Kastleland*, and (3) substantial similarity between the two works. See Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987) (listing three elements). Frye does not allege that the YMCA directly copied any portion of his play. Additionally, the ownership and access elements are not at issue here. Consequently, our task on appeal is limited to reviewing the district court's finding that *Kastleland* and *KnightQuest* are not substantially similar. This court recently clarified that a district court's finding of substantial similarity is reviewed for clear error. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 964-66 (8th Cir. 2005) ("Taylor II").

"Determination of substantial similarity involves a two-step analysis." Hartman, 833 F.2d at 120. "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works." Id. This is called step one, or the extrinsic test. "Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the

ordinary, reasonable person to the forms of expression." Id. This is step two, or the intrinsic test.

On the whole, the two-step test requires that the respective works must be substantially similar, not only in their general ideas but also in their expression. Id. This is because, pursuant to its Constitutionally enumerated power,[2] Congress has provided that "[i]n no case does copyright protection for an original work of authorship extend to any *idea*, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (emphasis added). The principle that a copyright does not protect ideas, but only the expression of those ideas, is longstanding. See Mazer v. Stein, 347 U.S. 201, 217-18 (1954) (citing Baker v. Selden, 101 U.S. 99 (1879)). Further, our case law recognizes that the mere employment of *scènes à faire*—defined as "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic"—cannot amount to infringing conduct. Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1042 (8th Cir. 2003) ("Taylor I") (internal marks omitted). In other words, similarities between two works " 'that are limited to hackneyed elements cannot furnish the basis for finding substantial similarity.' " Id. at 1043 (quoting Nimmer On Copyright § 13.03[B]4 at 13-75 (2002)). Thus, when the only "similarities are either noncopyrightable ideas, *scènes à faire*, or of an insubstantial nature" we have affirmed a district court's finding that no substantial similarity exists. See Hartman, 833 F.2d at 121.

*Kastleland* and *KnightQuest* are both interactive plays conducted at the same YMCA summer camp and employing a medieval theme. In each play, campers are

_____

[2]The Constitution grants Congress the power "To Promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8.

invited to join the characters on a quest and are guided through multiple challenges where they can acquire certain skills necessary to defeat the play's antagonists. The YMCA's employment of that general idea cannot form the basis for a copyright infringement claim. Frye argues that the two plays share additional similarities. Most of those similarities are, however, required or at least standard to the plays' shared hero-on-a-quest plot, medieval theme, and summer campfire setting. The challenges, acquisition of skills, and use of the skills to defeat evil characters are ever-present in the hero's journey. Most of the characters in each play are standard to a medieval theme. Other elements, such as the opening and closing campfires and carnival-like games, are dictated by the summer camp setting. After filtering out these ideas and *scènes à faire*,[3] we agree that any remaining similarities between the two plays are insubstantial. The district court's factual finding that no substantial similarity exists between *Kastleland* and *KnightQuest* was not clearly erroneous.

### III.

Accordingly, the judgment of the district court is affirmed.

_____

_____

[3]Frye's counsel agreed at oral argument—and the aforementioned precedent dictates—that we must filter out ideas and *scènes à faire*.