**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-2206**

———————

CHARLES W. ROSS BUILDER, INCORPORATED, d/b/a Charles Ross
Homes,

                Plaintiff - Appellant,

      v.

OLSEN FINE HOME BUILDING, LLC; BEVERLY OLSON; BOATHOUSE
CREEK GRAPHICS, INCORPORATED; RICK J. RUBIN; JENNIFER L.
RUBIN,

                Defendants - Appellees.

———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Newport News. Robert G. Doumar, Senior
District Judge. (4:10-cv-00129-RGD-DEM)

———————

Argued: September 19, 2012      Decided: November 8, 2012

———————

Before KEENAN and FLOYD, Circuit Judges, and Timothy M. CAIN,
United States District Judge for the District of South Carolina,
sitting by designation.

———————

Vacated and remanded by unpublished opinion. Judge Keenan wrote
the opinion, in which Judge Floyd and Judge Cain joined.

———————

**ARGUED:** Megan Burns, TROUTMAN SANDERS, LLP, Virginia Beach,
Virginia, for Appellant. Brian Nelson Casey, TAYLOR & WALKER,
PC, Norfolk, Virginia; Jeffrey Hamilton Geiger, SANDS ANDERSON,
PC, Richmond, Virginia; Linda M. Quigley, QUIGLEY & ASSOCIATE,
PLLC, Richmond, Virginia, for Appellees. **ON BRIEF:** John
Franklin, III, TAYLOR & WALKER, PC, Norfolk, Virginia, for

Appellee Boathouse Creek Graphics, Inc.; Mark D. Matthews, THE MATTHEWS LAW GROUP, PLLC, Richmond, Virginia, for Rick J. Rubin and Jennifer L. Rubin.

———————————

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this case brought under the Architectural Works Copyright Protection Act (Architectural Copyright Act), Pub. L. No. 101-650, §§ 701-706, 104 Stat. 5089 (1990) (codified in various sections of 17 U.S.C.), we consider whether the district court erred in awarding summary judgment to the defendants. The plaintiff's complaint alleged that the defendants infringed the plaintiff's copyrighted architectural work, consisting of a home design and related technical drawings. The district court awarded summary judgment upon finding that the defendants' allegedly infringing home design and the plaintiff's copyrighted home design were not "substantially similar." Because we conclude that the district court did not apply the correct test for determining whether the allegedly infringing material was substantially similar to the copyrighted home design, we vacate and remand for further proceedings.

I.

The plaintiff, Charles Ross Homes, Inc. (Charles Ross), designs and builds custom homes and proprietary model homes in the Williamsburg area of Virginia. In 2001, an architect hired by Charles Ross designed "the Bainbridge," a home design in the Georgian style (the Bainbridge model), for which Charles Ross

3

obtained copyright protection.[1]  Using the Bainbridge model, Charles Ross built a home on a lot in the Ford's Colony community in Williamsburg (the home).

In May 2009, potential buyers, Rick and Jennifer Rubin, toured the home and took with them marketing brochures for the Bainbridge model.  The Rubins later scheduled a meeting with a Charles Ross representative to discuss designing and building a custom home on property that the Rubins owned in Ford's Colony. Before the meeting took place, the Charles Ross representative sent the Rubins an unsolicited copy of "Places to Call Home," a portfolio of the company's proprietary model homes, which included plans and an artist's rendering for a home based on the Bainbridge model.  The portfolio indicated that the Bainbridge model was protected by copyright.  The Rubins later cancelled their meeting and did not have any further contact with Charles Ross.

The Rubins ultimately hired Boathouse Creek Graphics, Inc. (BC Graphics) to design their new home, and employed Olsen Fine Home Building, LLC (Olsen) as the builder.  Lisa Moberg, the President of BC Graphics, designed the Rubins' home (the Rubin residence).

---

[1]  Charles Ross received copyright protection for the Bainbridge model as an "architectural work," and for Charles Ross' technical drawings of the Bainbridge model.

4

While the Rubin residence was under construction, one of the owners of Charles Ross visited a contractor on that job site concerning an unrelated project. There, the owner from Charles Ross saw the plans for the Rubin residence. After looking at those plans, the Charles Ross owner concluded that the plans were "substantially similar" to the Bainbridge model.

Both the Bainbridge model and the Rubin residence are representative of the Georgian architectural style, which is popular among the colonial-style homes found throughout the Williamsburg area. In fact, only five architectural styles are permitted for homes built in Ford's Colony, one of which is the Georgian style. The Bainbridge model and the Rubin residence both were designed in accordance with the numerous restrictions placed on all homes built in Ford's Colony, as described in the development's Purchaser's Handbook.

The exteriors of the Bainbridge model and the Rubin residence share many similarities, including a two-story rectangular main body, a "walk-out" basement, a gabled roof featuring dormers, single-story wings flanking the main body of the residence, and a detached, three-car garage connected to the main body of the residence by a covered breezeway. The interior floor plans of the two designs also share several similarities, including a foyer flanked symmetrically by a dining room and a library, and a separate "friends" entryway. In addition, both

5

interior plans have a dining room, a kitchen, and a "keeping room," all configured in the same width.

Charles Ross filed a complaint against the Rubins, Olsen,[2] and BC Graphics (collectively, the defendants), asserting copyright infringement and other claims under the Architectural Copyright Act. After the defendants filed motions to dismiss and the district court heard argument on those motions, the court directed the defendants to file motions for summary judgment. Thereafter, the district court awarded summary judgment to the defendants, holding that Charles Ross had failed to show that the Bainbridge model and the Rubin residence were substantially similar in design. See Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC., 827 F. Supp. 2d 607, 624 (E.D. Va. 2011). Charles Ross filed a timely notice of appeal.

## II.

We exercise de novo review of a district court's award of summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is only appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute of material

---

[2] Charles Ross named Olsen, the corporate entity, as well as Beverly Olsen, its member and manager, as defendants.

fact. Fed. R. Civ. P. 56(a); Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir. 2009).

III.

Charles Ross contends that the district court reached an incorrect result in this case by failing to apply this Circuit's test for determining substantial similarity. Charles Ross argues that the central failure in the district court's analysis was the district court's use of the Second Circuit's "more discerning observer" test for determining substantial similarity, rather than the two-part test used by this Court in Universal Furniture International, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417 (4th Cir. 2010).

In response, the defendants argue that the district court did not err in employing the Second Circuit's "more discerning observer" test, because the Bainbridge model incorporated both original and unoriginal elements. Alternatively, the defendants contend that even upon application of this Court's two-part test, the Bainbridge model and the Rubin residence do not qualify as being substantially similar. We disagree with the defendants' arguments.

In recent decades, copyright protection has been extended to "architectural work" under the Architectural Copyright Act,[3] which defines such work as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The protected work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. §§ 101, 102(a)(8).

In enacting the Architectural Copyright Act, Congress intended to extend protection to the "arrangement and composition of spaces and elements" in architectural works, in recognition of the fact that "creativity in architecture frequently takes the form of a selection, coordination, or arrangement of [non-protected] elements into an original, protectable whole." H.R. Rep. No. 101-735 (1990), reprinted in 1990 U.S.C.C.A.N. 6935, 6949. However, the protections of the Architectural Copyright Act were not intended by Congress to afford copyright protection to "individual standard features," such as "common windows, doors, and other staple building components." Id.

---

[3] Before the Architectural Copyright Act was enacted, architectural plans could receive copyright protection as "pictorial, graphic, and sculptural works," but the architectural structures themselves were not protected. Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 188 (2d Cir. 2012).

To establish copyright infringement, a plaintiff must prove ownership of a valid copyright, and must show that the defendant copied the original elements of that copyrighted material. Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001)(citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). In the absence of direct evidence of copying, a plaintiff may create a presumption of copying by showing that the defendant had access to the copyrighted work, and that "the defendant's work is 'substantially similar' to the protected material." Id. (citing Towler v. Sayles, 76 F.3d 579, 581-82 (4th Cir. 1996)). In the present case, the plaintiff did not produce direct evidence of copying, and the district court assumed, without deciding, that the defendants had access to the Bainbridge model plans.

We have not previously considered a copyright claim brought under the Architectural Copyright Act. However, in Universal Furniture, a case involving alleged copyright infringement in the design of furniture, we applied our established two-part test requiring that a court consider both the "extrinsic" and "intrinsic" similarity of the works in question. Under this two-part test, to prove substantial similarity, a plaintiff must show that the works are (1) "extrinsically similar because they contain substantially similar ideas that are subject to copyright protection," and (2) "intrinsically similar in the

9

sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work." Universal Furniture, 618 F.3d at 435 (quoting Lyons, 243 F.3d at 801); see also Dawson v. Hinshaw Music Inc., 905 F.2d 731, 732-33 (4th Cir. 1990) (the two-part substantial similarity test).

We applied this two-part test in Universal Furniture in a context that is not analytically distinguishable from the case presently before us. The copyrighted furniture at issue in Universal Furniture had incorporated design elements of certain historical styles from English furniture of the 18th and 19th centuries. Id. at 425, 436. The process of designing these copyrighted lines of furniture involved "consulting public domain sources such as furniture books and antiques magazines," and then "combin[ing] elements from the public domain to create a different look," rather than merely replicating the style from an historical period. Id. at 425 (internal quotation marks omitted).

The plaintiff alleging infringement in Universal Furniture had received copyright protection for the original decorative designs appearing on the furniture at issue, as well for the designer's original compilations of decorative designs. Id. When a competitor began designing furniture that imitated the copyrighted lines, the copyright owner brought a claim against

10

the competitor for copyright infringement. Id. at 425-26. The district court held that the competitor produced furniture that was substantially similar to the copyrighted pieces. Id. at 426-27. We affirmed the district court's judgment, after applying our established two-part test for determining substantial similarity. Id. at 435-37.

We explained that under this test, extrinsic similarity is an objective inquiry, which requires consideration of "external criteria of substantial similarities in both ideas and expression." Id. at 435-36 (citation and internal quotation marks omitted). In conducting this objective inquiry, a court must consider whether the two works "contain substantially similar ideas that are subject to copyright protection." Lyons, 243 F.3d at 801 (citation omitted).

By contrast, intrinsic similarity is a subjective inquiry, Towler, 76 F.3d at 583-84, in which the court "looks to the 'total concept and feel of the works, but only as seen through the eyes of the . . . intended audience of the plaintiff's work.'" Universal Furniture, 618 F.3d at 436 (quoting Lyons, 243 F.3d at 801) (emphasis removed). As stated by Judge Learned Hand, the intrinsic similarity test asks whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as

11

the same."  Id.  (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960)).

We have stated that expert testimony often may be helpful to a court's determination of extrinsic similarity.  See, e.g., Universal Furniture, 618 F.3d at 435-36 ("expert testimony may be relevant" to extrinsic similarity); Towler, 76 F.3d at 583 (extrinsic similarity is shown "typically with the aid of expert testimony").  The intrinsic similarity prong of the analysis, however, generally does not require the aid of expert testimony. Towler, 76 F.3d at 583-84.

As noted above, the district court did not apply this Court's test for determining substantial similarity.  Instead, the district court elected to apply the Second Circuit's "more discerning observer" test, as well as a similar test articulated by the Eleventh Circuit in Intervest Construction, Inc. v. Canterbury Estate Homes, Inc., 554 F.3d 914 (11th Cir. 2008), a case involving an architectural copyright claim.

The district court stated that, under the "more discerning observer" test, courts distinguish between protectable and non-protectable elements, remove the non-protectable elements from consideration, and determine whether the remaining portions of each work, taken together, are conceptually similar.  827 F. Supp. 2d at 621 (citing Trek Leasing, Inc. v. United States, 66 Fed. Cl. 8, 19 (Ct. Fed. Cl. 2005)); see also Tufenkian

12

Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131-35 (2d Cir. 2003) (describing test for substantial similarity regarding copyright infringement claim involving a rug design, which included both protectable and non-protectable elements); Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001) (describing test, in context of quilt design). Here, the district court explained that it applied the "more discerning observer" test, because the Bainbridge model "incorporates sources other than its original expression," particularly in that its design "borrows many of its central features from the traditional Georgian style." 827 F. Supp. 2d at 621.

We conclude that the district court erred in failing to apply this Court's test for determining substantial similarity. Our two-part test, described above, has not been limited in application to infringement claims involving furniture design. We also have employed that test in several other copyright contexts.[4] See Lyons, 243 F.3d at 801-03 (costume that allegedly

---

[4] We note that two of our sister circuits, namely, the Eighth Circuit and the Ninth Circuits, have employed the same, or a similar, articulation of the substantial similarity test used in this Circuit. See, e.g., Frye v. YMCA Camp Kitaki, 617 F.3d 1005, 1008 (8th Cir. 2010) (employing two-step analysis, first applying the "extrinsic test," which "focus[es] on objective similarities in the details of the works," and, second, the "intrinsic test," which "depend[s] on the response of the ordinary, reasonable person to the forms of expression") (citation omitted); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 848 (9th Cir. 2012) (employing two-step (Continued)

13

infringed copyright of "Barney," the purple dinosaur children's character); <u>Towler</u>, 76 F.3d at 583-84 (screenplay that allegedly infringed a copyrighted screenplay); <u>Dawson</u>, 905 F.2d at 732-33 (musical composition that allegedly infringed a copyrighted arrangement of spiritual music).

In the present case, the circumstances identified by the district court do not support its deviation from this Court's test for determining substantial similarity. Like the protected work in <u>Universal Furniture</u>, the Bainbridge model incorporated design elements from an historical style, in this case, the Georgian style of architecture. <u>See</u> 618 F.3d at 425, 436. Moreover, architectural works such as the Bainbridge model, like the furniture designs at issue in <u>Universal Furniture</u>, include a combination of original, protected elements, as well as unoriginal, non-protected elements. Architectural works include the unoriginal, and thus non-protectable, elements like windows, doors, and other individual standard features, <u>see</u> 17 U.S.C. § 101, while furniture pieces include unoriginal, non-protectable elements like "shape and color." 618 F.3d at 435-37. Therefore,

---

analysis, comprised of the "extrinsic test," which is an "objective comparison of specific expressive elements," and the "intrinsic test," a "subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works") (citation and internal quotation marks omitted).

14

neither type of work only incorporates elements that are wholly original and protected.

Analytical similarity also is found in courts' treatment of architectural works and the design of furniture as "compilations." The design of furniture has received copyright protection as a "compilation." Id. at 425, 431. Likewise, several courts have analogized architectural works to "compilations" in the copyright context, because originality in architectural works frequently comes from the "arrangement and composition" of spaces and other design elements, which are not otherwise protectable. See, e.g., Intervest, 554 F.3d at 919; Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC, 716 F. Supp. 2d 428, 438 (E.D. Va. 2010).

For these reasons, we conclude that the two-part test for determining substantial similarity, as employed in Universal Furniture and in our earlier precedent, is applicable to a copyright infringement claim involving architectural works such as the Bainbridge model. See Lyons, 243 F.3d at 801; Towler, 76 F.3d at 583-84; Dawson, 905 F.2d at 732-33. Although the district court conducted a lengthy comparative analysis of the Bainbridge model and the Rubin residence, we are unable to determine whether the district court would have reached the same conclusion had the court applied this Court's two-part test for determining substantial similarity.

As stated above, the intrinsic similarity prong of this Court's two-part test asks whether "the ordinary observer [or member of the intended audience of plaintiff's work], unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same," Universal Furniture, 618 F.3d at 436 (quoting Peter Pan Fabrics, 274 F.2d at 489). The district court improperly disregarded this principle in conducting its substantial similarity analysis. See 827 F. Supp. 2d at 621-22 (rejecting as "inapplicable" a similar variation of our "intrinsic" similarity inquiry).

The effect of the district court's failure to apply this Court's test for determining substantial similarity is that throughout its analysis, the district court relied on its finding that many of the similarities between the Bainbridge model and the Rubin residence related to non-protected elements of those works. Thus, in segregating these non-protected similarities, the district court deviated from the essential principle of the intrinsic component of our two-part test, namely, that a court is not to "set out to detect the disparities," or engage in "analytic dissection of protected and unprotected elements." Universal Furniture, 618 F.3d at 436, 437 (citations omitted).

For these reasons, we vacate the district court's judgment. We remand the case to the district court for application of this

16

Court's two-part test for determining substantial similarity, and for further proceedings consistent with the principles expressed in this opinion.[5]

VACATED AND REMANDED

---

[5] Based on our holding, we express no view on the merits of the parties' arguments concerning the district court's decision to assume, without deciding, that Charles Ross had access to the Bainbridge model. 827 F. Supp. 2d at 617-18. Nothing in our decision prevents the parties or the district court from revisiting this issue on remand.

Additionally, in view of our holding, we need not consider Charles Ross' argument that the district court erred in concluding that the Bainbridge model was entitled to only a lesser, "thin" degree of copyright protection because the design was constrained by the elements of Georgian architecture, and by the requirements of the Ford's Colony Purchaser's Handbook. These factors should be considered by the district court in the first instance within the framework of this Court's two-part test for determining substantial similarity.