**Randall S. FERMAN and Extreme Hunting Solutions, LLC, Plaintiffs,**

v.

**JENLIS, INC. and Daniel S. Amundson, Defendants.**

**No. 4:16–cv–00074–JEG**

United States District Court, S.D. Iowa, Central Division.

Signed August 18, 2016

Brett J. Trout, Brett J. Trout, P.C., Desmoines, IA, for Plaintiffs.

Edward Peter Sheu, Best & Flanagan LLP, Minneapolis, MN, Matthew M. Craft, Dutton Braun Staack & Hellman PLC, Waterloo, IA, for Defendants.

## ORDER

JAMES E. GRITZNER, Senior Judge, UNITED STATES DISTRICT COURT

This matter is before the Court on Motion by Defendants Jenlis, Inc. (Jenlis) and

Daniel S. Amundson (Amundson) (jointly, Defendants) to dismiss the Complaint by Plaintiffs Randall S. Ferman (Ferman) and Extreme Hunting Solutions, LLC (Extreme Hunting) pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(3). The parties have not requested a hearing, and the Court finds a hearing is unnecessary. The Motion is fully submitted and ready for ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Courts consider motions to dismiss "accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Cockram v. Genesco, Inc., 680 F.3d 1046, 1056 (8th Cir. 2012) (citation omitted).

Ferman owns a copyrighted work entitled "No Trespassing signs with pictures of wireless surveillance cameras with no antenna mounted on the side, and antenna mounted on the top of the camera" (the Ferman Sign). Ferman owns Extreme Hunting and has assigned ownership of the Ferman Sign to the entity. Ferman created the Ferman Sign in 2014 and has distributed it nationally since 2014. Ferman registered his copyright in the Ferman Sign around January 16, 2015. A copy of the certificate of registration is attached as an exhibit to the Complaint.

Like Plaintiffs, Jenlis also develops and sells "no trespassing" signs. Amundson is the chief executive officer of Jenlis. Around January 14, 2016, Plaintiffs allegedly discovered that Defendants were selling a "no trespassing" sign (the Jenlis Sign) similar to the Ferman Sign. An image of the Jenlis Sign is attached as an exhibit to the Complaint, though an image of the Ferman sign is not. The Jenlis Sign includes wording, a two-toned colored background, and a depiction of a camera, all allegedly similar to the Ferman Sign. Defendants allegedly had access to the Ferman Sign prior to their creation of the Jenlis Sign.

On March 18, 2016, Plaintiffs filed a one-count Complaint alleging infringement of Plaintiffs' copyright in the Ferman Sign in violation of 17 U.S.C. §§ 106 and 501 (the Copyright Act). Plaintiffs request monetary and equitable relief. On April 19, 2016, Defendants filed the present Motion to Dismiss. Plaintiffs resist.

## II. DISCUSSION

### A. Jurisdiction

#### 1. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over claims arising under the Copyright Act pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") and 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.").

#### 2. Personal Jurisdiction

Jenlis is a Minnesota corporation with its principal place of business in Minnesota. Amundson is a resident of Winona, Minnesota. Plaintiffs allege this Court has jurisdiction because Defendants are doing business in the State of Iowa and in this judicial district, because the allegedly infringing acts occurred in this judicial district, and because Defendants have injured Plaintiffs in this judicial district. Defendants argue these general allegations are insufficient to support a finding of personal jurisdiction and therefore move to dismiss the Complaint under Federal Rule of Civil

Procedure 12(b)(2). Defendants contend they are Minnesota residents with no property, place of business, or employees in Iowa, and no other substantial contacts sufficient to find general personal jurisdiction. Furthermore, Defendants argue Plaintiffs have not alleged any specific Jenlis sign was marketed or sold in Iowa, and that Plaintiffs have not alleged any other specific conduct connecting Defendants to Iowa. Defendants contend that the only proffered evidence of their contact with Iowa was an affidavit by Ferman that included only hearsay. Specifically Ferman's affidavit included a hearsay account that the Jenlis Sign was offered for sale at a trade show in Des Moines, Iowa, called the 2016 Iowa Deer Classic, and that a business card of a Jenlis salesperson was observed at the trade show. On surreply, Plaintiffs submitted an affidavit of a Justin Houseal, which includes non-hearsay evidence of Jenlis's presence at the trade show.

■■■ "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." K–V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations and citation omitted). The evidentiary showing is minimal and can be shown not only from the pleadings but also from affidavits and exhibits filed in support of or opposition to the motion. Id. at 592. The Court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." Fastpath, Inc. v.

Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014).

■■■ A federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and in conformance with due process. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 n.2 (8th Cir. 1991); Fed. R. Civ. P. 4(k)(1)(A). "Because Iowa's long-arm statute 'expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution,' [the Court's] inquiry is limited to whether the exercise of personal jurisdiction comports with due process." Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010) (quoting Hammond v. Fla. Asset Fin. Corp., 695 N.W.2d 1, 5 (Iowa 2005)).

■■■ Due process requires the nonresident defendant to have sufficient "minimum contacts" with the forum state such that "maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.' " World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "If a court determines that a defendant has minimum contacts with the forum state, it may then consider 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.' " Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting Burger King Corp. v. Rudzewicz, 471

U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■■■ "Personal jurisdiction can be specific or general." Viasystems, Inc. v. EBM—Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir.2011). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." Fastpath, 760 F.3d at 820 (citation and internal quotation marks omitted). The Eighth Circuit evaluates five factors in determining whether specific jurisdiction exists: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties." Downing v. Goldman Phipps, PLLC, 764 F.3d 906, 913 (8th Cir.2014) (internal citations and quotation marks omitted). Factors one through three are primary, while factors four and five are secondary. Dever, 380 F.3d at 1074. The third factor, the relation of the cause of action to the contacts, is a key inquiry for specific jurisdiction, which inheres when a suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Daimler AG v. Bauman, — U.S. ——, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)) (alterations in original).

■■■ "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Walden v. Fiore, — U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014). This means that "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." Id. at 1122 (quoting Burger King, 471 U.S. at 475, 105 S.Ct. 2174). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir.2003) (quoting Burger King, 471 U.S. at 475, 105 S.Ct. 2174). While Plaintiffs ultimately bear the burden of proof to establish personal jurisdiction, "[a]t the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [Plaintiffs], is sufficient to support a conclusion that the exercise of personal jurisdiction over [Defendants] is proper." Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir. 2015).

■■■ Plaintiffs have made a prima facie showing that Jenlis purposefully directed its activities at residents of this forum by offering its products for sale at a Des Moines trade show, which is supported by the affidavit of Justin Houseal and by photographs of the Jenlis Sign and a Jenlis business card present at the trade show. Plaintiffs allege this conduct as the basis for their infringement claim. Therefore, the Court finds that the requirements of specific personal jurisdiction are satisfied as to Jenlis. See Burger King, 471 U.S. at 476–77, 105 S.Ct. 2174 (holding that specific jurisdiction arises if the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities") (citations and internal quotation marks omitted). Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) as to Jenlis must therefore be denied.

■■■ On the other hand, Plaintiffs have not made a prima facie showing that this Court has personal jurisdiction over Amundson. Significantly, the only allega-

tion connecting Amundson to this dispute and this forum is the bare assertion that Amundson is the chief executive officer of Jenlis. Standing alone, the allegation that Amundson is a corporate officer of Jenlis is insufficient to support a finding of personal jurisdiction under Iowa's long-arm statute. See Whalen v. Connelly, 545 N.W.2d 284, 295 (Iowa 1996) ("[A] nonresident corporate agent is not individually subject to the forum state's in personam jurisdiction if that individual's only contact with the state is by virtue of his acts as a fiduciary of the corporation."). Therefore, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) as to Amundson must be granted.

## B. Rule 12(b)(6) Motion

### 1. Standard for the Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "In ruling on a motion to dismiss .... courts 'must take all of the factual allegations in the complaint as true,' but 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, ―― U.S. ――, 134 S.Ct. 2056, 2065 n.5, 188 L.Ed.2d 1039 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "[D]etailed factual allegations" are not required, but the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550

U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

On a Rule 12(b)(6) motion to dismiss, the question is not whether the plaintiff will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 530, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). While Twombly's plausibility standard is not a "probability requirement," "it asks for more than a sheer possibility that the defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955). The Court must be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556, 127 S.Ct. 1955 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Further, a court must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (citation and internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.

### 2. Whether Plaintiffs State a Claim against Amundson

Because Plaintiffs have not made a prima facie showing that this Court has personal jurisdiction over Amundson, the Court need not address Defendants' alter-

native motions to dismiss as to him. The jurisdictional determination does not provide solely a technical defense to the case on the part of Amundson, however, since the Court is required to examine the Rule 12(b)(6) motion in any event and the Complaint also fails to state a plausible claim for relief against him. Corporate officers are generally not liable for infringements of the corporations they oversee. See Dangler v. Imperial Mach., Co., 11 F.2d 945, 947 (7th Cir. 1926) ("[I]n the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation though committed under their general direction . . . ."). Plaintiffs articulate no facts that would justify personal liability against Amundson here. Cf. Pinkham v. Sara Lee Corp., 983 F.2d 824, 834 (8th Cir. 1992) ("An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity, is personally liable for the infringement.") (quoting S. Bell Tel. & Tel. v. Associated Tel. Directory Publishers, 756 F.2d 801, 811 (11th Cir.1985)). Furthermore, Plaintiffs did not resist Defendants' Rule 12(b)(6) motion as to Amundson. Therefore, the Court finds, in the alternative, that the Complaint fails to state a plausible claim for relief against Amundson.

### 3. Whether Plaintiffs State a Claim against Jenlis [1]

■ To establish a claim for copyright infringement against Jenlis, Plaintiffs must show (1) Plaintiffs' ownership of the allegedly infringed work, and (2) Jenlis's copying of the copyrighted work. Nelson v. PRN Prods., Inc., 873 F.2d 1141, 1142 (8th Cir. 1989). In the absence of direct evidence of copying, Plaintiffs may establish copying by proving (1) Jenlis had access to the copyrighted work, and (2) substantial similarity between the works. Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987). "Determination of substantial similarity involves a two-step analysis. There must be substantial similarity not only of the general ideas but of the expressions of those ideas as well." Id. (citations and internal quotation marks omitted). "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." Id. (citations omitted). While the extrinsic test in the Hartman analysis (similarity of ideas) typically depends on the trier of fact, the intrinsic test (similarity of expression) does not. Id. Rather, the intrinsic test depends on objective criteria for which expert analysis or analytical dissection is unnecessary, including "the type of artwork involved, the materials used, the subject matter, and the setting for the subject." Nelson, 873 F.2d at 1143 (citation and internal quotation marks omitted).

### a. Substantial Similarity of Ideas

■ Defendants contend Plaintiffs fail to state a claim for infringement because they have not sufficiently alleged that the Ferman Sign and the Jenlis Sign are substantially similar. In resistance to Defendants' motion, Plaintiffs argue the extrinsic test for substantial similarity of ideas is satisfied by the following commonalities between the works: the works are two-dimensional signs; the works are created by applying ink to flexible sheets; the

---

1. Although the Court has already discussed Defendants' Rule 12(b)(6) motion as to Amundson, the analysis regarding Jenlis would apply to him with equal force.

works are designed to target hunters; the subject matter is the same; the works are two-toned; the works are both "no trespassing" signs; the works include a solid colored band where the colors of the background and text are reversed; the works include a wireless, motion-activated hunting camera, which have on their faces a circle and two quadrilaterals; and the works have the word "Owner" printed with a signature line.

Not all elements of a work are protectable by copyright. For that reason, the Court must filter out a work's unprotected elements before addressing the substantial similarity of an allegedly infringing work. See Frye v. YMCA Camp Kitaki, 617 F.3d 1005, 1008–09 (8th Cir. 2010) (assessing substantial similarity only after "filtering out" elements not protected by copyright). The exclusions from copyright protection begin with the Copyright Act itself, in which Congress provided that "[i]n no case does copyright protection ... extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied" in a work. 17 U.S.C. § 102(b). In addition to this main exclusion, federal regulation provides that "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering or coloring" are also not protected. 37 C.F.R. § 202.1.

■■■ "The principle that a copyright does not protect ideas, but only the expression of those ideas, is longstanding." Frye, 617 F.3d at 1008 (citing Mazer v. Stein, 347 U.S. 201, 217–18, 74 S.Ct. 460, 98 L.Ed. 630 (1954)). "Further, our case law recognizes that the mere employment of *scènes à faire*—defined as 'incidents, characters or settings which are as a practical matter indispensable, or at least stan- dard, in the treatment of a given topic'— cannot amount to infringing conduct." Id. (citing Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1042 (8th Cir. 2003)). Similarities between two works "that are limited to hackneyed elements cannot furnish the basis for finding substantial similarity." Taylor, 315 F.3d at 1043 (quoting Nimmer on Copyright § 13.03[B]4 at 13–75 (2002)). Likewise, there is no copyright protection for "fragmentary works and phrases" or for "forms of expression dictated solely by functional characteristics," because "such material does not exhibit the minimal level of creativity necessary to warrant copyright protection." Regents of the Univ. of Minn. v. Applied Innovations, Inc., 685 F.Supp. 698, 707 (D. Minn. 1987), aff'd, 876 F.2d 626 (8th Cir. 1989) (citation and internal quotations omitted).

In light of the foregoing, the Court must conclude that many of the alleged similarities offered by Plaintiffs are not protectable by copyright. For instance, there can be no copyright for a "two-dimensional sign" that is made of "ink applied to flexible sheets." Pl. Br. in Resist. at 5, ECF No. 10. These traits of the signs' manufacture fall directly under the exception to copyright protection in § 102(b), which states there shall be no copyright protection for any "procedure, process, [or] method of operation." As such, these are not "details of the works." Hartman, 833 F.2d at 120. Even assuming the unlikely conclusion that the mere practice of applying ink to a two-dimensional sign is a "work[] of authorship" under § 102(a), it would nonetheless be a "form[] of expression dictated solely by functional characteristics" and therefore beyond the scope of copyright protection. Applied Innovations, 685 F.Supp. at 707 (D. Minn. 1987).

Neither can there be copyright protection for signs that are "are specifically

designed to target hunters," or that have the same "subject matter," or that are "No Trespassing signs." Pl. Br. in Resist. at 5, ECF No. 10. Each of these alleged similarities is not related to a particular form of expression or authorship, but rather relate to the alleged concept, use, and prospective purchasers of the "no trespassing" signs at issue. By offering these abstract concepts as alleged similarities between the works, Plaintiffs ignore the fundamental axiom that "a copyright does not protect ideas, but only the expression of those ideas." Frye, 617 F.3d at 1008. For that reason, Plaintiffs cannot claim copyright protection for the manufacture of "no trespassing" signs, and consequently cannot claim copyright protection for the phrase "no trespassing" on the Ferman Sign. Because "no trespassing" signs include the words "no trespassing" practically by definition, the phrase is not protected. See Toro Co. v. R & R Prods. Co., 787 F.2d 1208, 1212 (8th Cir.1986) ("[C]opyright protection will be denied to even some expressions of ideas if the idea behind the expression is such that it can be expressed only in a very limited number of ways."). Similarly, Plaintiffs cannot maintain a claim for infringement by arguing that both works include the word "owner" because, as noted above, individual words, short phrases, and slogans are not afforded copyright protection. 37 C.F.R. § 202.1(a).

With the Ferman Sign's unprotected elements filtered out, the Court considers the following elements that, at least insofar as they together constitute the distinctive layout and design of the sign, could be protected: the work is two-toned; the work includes a solid colored band where the colors of the background and text are reversed; and the work includes a wireless camera, which has on its face a circle and two quadrilaterals.

Of course, a work containing a number of elements that are not individually protectable can nonetheless be protected as a whole if the work features an original selection or arrangement of those elements. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 362, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The Court will assume that Plaintiffs allege infringement based on the particular expression of these ideas together, protected and unprotected, rather than the individual ideas themselves. Cf. Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc., 821 F.2d 800, 806 (D.C. Cir. 1987) ("None of the individual elements of the Reader's Digest cover—ordinary lines, typefaces, and colors—qualifies for copyright protection. But the distinctive arrangement and layout of those elements is entitled to protection as a graphic work.") On that basis, the Court concludes Ferman has alleged sufficient facts to state a claim as to the extrinsic similarity of ideas of the Ferman Sign and the Jenlis Sign.[2]

### b. Substantial Similarity of Expression

This Court may properly determine substantial similarity of expres-

2. In their reply brief, Defendants dispute whether the Ferman Sign is entitled to full copyright protection, arguing instead that the Ferman Sign should be treated as a "compilation" entitled only to limited protection. Feist, 499 U.S. at 359, 111 S.Ct. 1282. However, Plaintiffs' Certificate of Registration, ECF No. 1-1, states that Ferman created "artwork" in addition to a "compilation." Furthermore, Ferman has submitted an affidavit, ECF No. 14-1, in which he declares that the Certificate of Registration relates to the Ferman Sign. Because the Certificate of Registration offers no information as to what documents were submitted to the Copyright Office, the Court relies on Ferman's affidavit and will assume for the purpose of the motion that the Ferman Sign is protected as an "artwork."

sion between the Ferman Sign and the Jenlis Sign as a matter of law on a motion to dismiss. Nelson, 873 F.2d at 1143–44 ("The trial judge could properly determine the matter of substantial similarity as a matter of law and did so by granting defendants' motion to dismiss the copyright count on the ground that it failed to state a claim for infringing use.").[3] This is so because, as discussed above, the intrinsic test depends on objective criteria for which factual development in the record is unnecessary. Hartman, 833 F.2d at 120. Here, the Court is in a proper position to determine substantial similarity of expression because the parties have submitted images of the Ferman Sign and the Jenlis Sign as exhibits to their briefs. See Nelson, 873 F.2d at 1143–44 (holding that the district court could properly apply the substantial similarity test since it had complete copies of the original work and the allegedly infringing work). "Though matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." Gorog v. Best Buy Co., 760 F.3d 787, 791 (8th Cir. 2014) (citation and internal quotations omitted); see also Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th

Cir. 2002) ("In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). For example, in Nelson, the district court properly considered two sets of song lyrics appended to the plaintiff's complaint. 873 F.2d at 1142. Similarly, in cases involving interpretation of contract terms, the contract documents are usually considered embraced by the pleadings and can be considered on a motion to dismiss. Gorog, 760 F.3d at 791. That same principle allows this Court to examine the Ferman Sign and the Jenlis Sign at this stage of the litigation. As the Second Circuit has concluded, "[w]hen a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'" Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) (quoting Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 766 (2d Cir. 1991).

Below is an image of the Ferman Sign, followed by an image of the Jenlis Sign:

---

**3.** Like the Eighth Circuit, the Second, Fifth, Ninth, and Tenth Circuits have also endorsed the practice of considering the question of substantial similarity on a Rule 12(b)(6) motion to dismiss. See, e.g., Wild v. NBC Universal, 513 Fed.Appx. 640, 641 n.1, 642 (9th Cir. 2013) (holding that the district court properly determined substantial similarity as a matter of law on a motion to dismiss); Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) ("[W]here, as here, the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a

motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."); Randolph v. Dimension Films, 381 Fed.Appx. 449 (5th Cir. 2010) (unpublished per curiam) (affirming lower court's dismissal of infringement action for failure to state a claim where allegedly infringing work was not substantially similar as a matter of law); Jacobsen v. Deseret Book Co., 287 F.3d 936, 941–42 (10th Cir. 2002) (when original work and allegedly copyrighted work compared on 12(b)(6) motion, legal effect of works determined by works themselves, not complaint's allegations).

Ferman Sign, Pl. Br. in Resist.—Ex. A, ECF No. 10–1; Jenlis Sign, Pl. Br. in Resist.—Ex. B, ECF No. 10–2.

The Court's analysis of similarity of expression is based on a careful examination of the two works depicted above. To begin,

the Ferman Sign is red and white. The top third of the sign is red, and displays the text "NO TRESPASSING" in large white letters. The bottom two-thirds of the sign are white and are bordered in red. Along the left edge of the sign there is an image in red of a two-dimensional wireless camera. The image takes up about 25% of the sign's width. The camera has a camouflage border and an antenna protruding from the top left. Within the camera's camouflage border there is a dark rectangle containing a small white circle, beneath which is a small white rectangle and a larger white quadrilateral. Beneath the camera itself is the text "Images sent immediately via text/email." Along the right edge and taking up most of the remaining space is the text "THIS PROPERTY IS PROTECTED BY CELLULAR CAMERA SURVEILLANCE VIOLATORS WILL BE PROSECUTED." Along the bottom edge in smaller lettering is the text "OWNER/LESSEE" followed by an underscored line and "PHONE #" followed by an underscored line.

The Jenlis sign is yellow and black. It is predominantly yellow with center-justified black text and is bordered in black. A black band covers approximately the top eighth of the sign, on which the text "WARNING" is written in large yellow letters. Below the black band is a yellow band taking up approximately one half of the sign area. Along the left edge of the large yellow band is the text "LIVE FEED" rotated 90 degrees counterclockwise. Along the right edge is the same text rotated 90 degrees clockwise, so as to mirror the left. Along the bottom edge of the yellow band is the text "SURVEILLANCE CAMERAS IN USE." Centered against the yellow background is a three-dimensional depiction of a gray camera. The camera appears three-dimensional because it is rotated so its left side appears slightly farther away from the viewer than the right, revealing the right edge of the camera. From the top of the right edge emanate concentric and successively larger arcs depicting the camera's wireless transmission of data. The camera is not ornamented with any patterns. In the top third of the face of the camera is a light gray rectangle, beneath which is depicted a circular aperture. Beneath the aperture is a small inset gray square. Below the sign's main yellow area is a second black band taking up approximately one quarter of the sign, on which the text "NO TRESPASSING" is written in large yellow letters. Beneath the second black band and taking up the remaining area, approximately one eighth of the sign, is another yellow band. In the middle of the yellow band is written "Owner/Occupant:" followed by an underscored line, which is followed by the text "MS 609.605."

Upon careful review, the Court finds that the lack of similarities in expression between the Ferman Sign and the Jenlis Sign is striking, unmistakable, and unavoidable. First, the two-toned colors of the signs are markedly different colors, are proportioned differently, and are laid out differently. Whereas the Ferman Sign has one large red stripe at the top with the remainder of the sign in white, the Jenlis Sign has four colored sections alternating in black and yellow. Second, the placement of the signs' prominent warnings is not similar. Whereas the Ferman Sign has "NO TRESPASSING" written across the top, the Jenlis Sign has that text in a black band near the bottom of the sign, and instead has "WARNING" written across the top, which does not appear on the Ferman Sign at all.

The textual content of the signs are not similarly expressed in style, content, or layout. In addition to the words "NO TRESPASSING," the Ferman Sign's text is comprised by a few relatively long

phrases that read like normal English: "THIS PROPERTY IS PROTECTED BY CELLULAR CAMERA SURVEIL-LANCE[.] VIOLATORS WILL BE PROSECUTED[.]" and further states beneath the image of the camera "Images sent immediately via text/email[.]" In contrast, the Jenlis Sign includes only a few fragmentary phrases: "LIVE FEED," "WARNING," and "SURVEILLANCE CAMERAS IN USE." Each sign includes text not included by the other. Unlike the Ferman Sign, the Jenlis Sign includes text rotated 90 degrees, while none of the Ferman Sign text is rotated. Furthermore, the Jenlis Sign provides a space for "Owner/Occupant" while the Ferman Sign designates that space as "Owner/Lessee" and additionally leaves a space for "Phone #", which the Jenlis Sign does not. At the bottom right, the Jenlis Sign includes a reference to the Minnesota criminal trespassing statute, Minn. Stat. § 609.605, while the Ferman Sign does not include any legal reference.

Turning to the images of wireless cameras on the signs, each camera is rectangular, has an upper quadrilateral, a lower quadrilateral, and a circular aperture. Nothing suggests the two signs depict the same type of camera, and the graphical rendering of the cameras is not similar. Among the cameras' differences are: the Ferman Sign's camera has an antenna while the Jenlis Sign's does not, the Ferman Sign's camera appears two dimensional and front-facing while the Jenlis Sign's appears three dimensional and positioned at an angle, the Ferman Sign's camera is camouflaged while the Jenlis Sign's is solid gray, the Ferman Sign does not indicate waves emanating from the camera while the Jenlis Sign does, and the Ferman Sign's camera is in the bottom left quadrant of the Ferman Sign while the Jenlis Sign's camera is centered in the top half of the Jenlis Sign.

Given the lack of similarity between the two signs at issue and in light of their pronounced dissimilarities, the Court cannot conclude that a reasonable observer could find the Jenlis Sign substantially similar to the Ferman Sign.[4] Although there are some minor similarities between the two works, these similarities are not "substantial" and could not lead an ordinary, reasonable observer to conclude the Ferman Sign had been copied. See Sun Media Sys., Inc. v. KDSM, LLC, 564 F.Supp.2d 946, 987 (S.D. Iowa 2008) ("Even assuming a general extrinsic similarity between the [works] in question, the differences between the [works] are so significant that it is simply not reasonable to think that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the works] as the same.'") (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489

4. Plaintiffs contend that the Court may not consider dissimilarities between the signs when determining substantial similarity, citing Rottlund Co. v. Pinnacle Corp., 452 F.3d 726, 731 (8th Cir. 2006) ("Similarity of ideas is evaluated extrinsically, focusing on objective similarities in the details of the works."). This argument is unpersuasive, however, for the tautological reason that if material elements of a work are dissimilar, those same elements will be *not similar*. See Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 945 (8th Cir. 1992) ("[U]nder Hartman ... we examine the works to ascertain if they are so **dissimilar** that ordinary, reasonable minds cannot differ as to the absence of substantial similarity in expression.") (emphasis added) (internal citations, quotation marks, and alterations omitted). Moore demonstrates that dissimilarity is a proper, if not necessary, consideration under Hartman. See also Sun Media Sys., Inc. v. KDSM, LLC, 564 F.Supp.2d 946, 987 (S.D. Iowa 2008) ("[T]o an ordinary observer, the dissimilarities between the [works] are immediately apparent ....").

(2d Cir.1960)) (third alteration in original). At most, the similarities in expression between the two signs flow from the similarity of ideas and subject matter, which is insufficient to support a substantial similarity of expression. See Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 913 (2d Cir.1980) ("[W]here the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying."). For these reasons, the Court must conclude as a matter of law that the Jenlis Sign and the Ferman Sign are not substantially similar. Consequently, Plaintiffs have failed to state a plausible claim for relief. Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) therefore must be granted.

### III. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss for lack of personal jurisdiction, ECF No. 7, is **granted** as to Amundson and **denied** as to Jenlis. Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted, ECF No. 7, is **granted**. Defendants' Alternative Motion to Dismiss for improper venue, ECF No. 7, is **denied as moot**. The above-entitled action is **dismissed**.

**IT IS SO ORDERED.**